[Civ. No. 11758. Fourth Dist., Div. Two. Apr. 13, 1972.]

In re the Marriage of HAROLD L. and SALLY J. ROSAN.
SALLY J. ROSAN, Appellant, v.
HAROLD L. ROSAN, Respondent.

**COUNSEL**

Martin B. Weinberg for Appellant.

Cochran, Dickerson & Shepphird and John D. Cochran for Respondent.

## OPINION

**KAUFMAN, J.**—Wife, who was the respondent in the court below, appeals from an interlocutory judgment of dissolution of marriage contending that the trial court failed to divide the community assets and liabilities equally and abused its discretion in the award of spousal and child support and attorney fees and in refusing to make an award for the cost of accounting services rendered to Wife in connection with the litigation.

### Factual Background

Certain of the specific facts are more appropriately set forth in connection with the several contentions. The general factual background is as follows. The parties were married some 17 years. There are two children of the marriage, both boys, the older born November 6, 1953, and the younger November 8, 1955.

Approximately one year after the marriage of the parties, Husband commenced employment with Hudson Jewelers and has been employed by that firm continuously for the past 16 years. He is, and for the past several years has been, sales manager and supervisor of the business' two stores in Whittier and Santa Ana. During the marriage he has acquired 15 percent of the capital stock of his corporate employer and is vice president of the corporation. His compensation from this employment consists of a gross salary of $1,050 per month plus commissions based upon gross profits of the company paid on a quarterly basis plus a bonus, optional with the employer, paid at about Christmas time each year.[1] In addition, as an expense allowance, Husband receives the sum of $150 per month from his employer. His earnings from employment, after deduction of taxes and exclusive of the expense allowance, totaled $25,400 for calendar year 1967, $25,600 for calendar year 1968 and $22,400 for calendar year 1969.[2]

The parties were accustomed to living in a style commensurate with the substantial earnings of Husband. They lived in a home valued by the parties at the time of trial at $56,000. They took frequent trips to Las

---

[1]From 1967 through 1969 the bonus amounted to approximately $7,000 each year. For 1970 Husband received a bonus check in the amount of $5,034.50. Whether this amount was gross or net after taxes the record does not disclose.

[2]The parties stipulated to these figures. Although the case was tried in September 1970 and the interlocutory judgment is dated June 4, 1971, some stipulations concerning sale of the family residence and related matters having intervened, no evidence was introduced nor any stipulation made as to Husband's earnings in 1970.

Vegas and dined out frequently. As testified by Husband: "We would live quite well. We always have."

Wife was not employed during the marriage. At one time in 1965 or 1966 she undertook a course of study in real estate and was employed for a short time in a department store, but gave up these activities because of some behavioral or emotional problems of the older child. At the time of trial Wife was not employed. She testified, however, that it was her intention to commence a course of instruction in real estate as well as some college courses to prepare her for employment.

### Division of Assets and Liabilities

The community liabilities amounted to some $3,280 of which Husband was ordered to pay $2,080 and Wife $1,200. As valued by the trial court, the community assets amounted to $53,897 of which $26,949 was awarded to Wife and $26,948 awarded to Husband. The assets awarded to Husband consisted of the Hudson Jewelers stock valued at $30,711 and $500 insurance proceeds from the wreck of a 1963 Cadillac. Wife was awarded all of the remaining community property which included a $1,000 equity in a 1966 Buick, $6,790 cash proceeds from the sale of the family residence prior to judgment, $412 in a trust account, household furniture and furnishings valued at $3,000, stocks valued at $1,304, an undivided one-half interest in several rental properties producing no income but valued at $8,000, and an undivided one-half interest in two second deeds of trust valued at $2,180 and producing cash receipts of $25.50 per month including principal and interest. To equalize the division of the property Husband was ordered to execute and deliver to Wife his promissory note in the amount of $4,263 payable principal and interest at eight percent at the end of 48 months.[3]

The parties stipulated to the value of most of the assets except the Hudson Jewelers stock. ▪ Wife's contention that the property was not equally divided as required by Civil Code, section 4800 is based on her assertion that the court grossly undervalued the Hudson Jewelers stock.

---

[3]Husband was also ordered to pay to Wife in two installments due May 1 and September 1, 1971, the sum of $2,100 from funds in the amount of $5,855.10 received by him on account of fourth quarter commissions and year-end bonus in 1970. We are unable to determine from the record whether this constituted an additional division of property or an order in aid of prior support orders by which Husband had been ordered to pay to Wife for support of herself and the two minor children fixed monthly sums plus one-half of commissions and bonuses received by him. In any event, the parties make no contention with respect to this part of the interlocutory judgment.

Ownership of the Hudson Jewelers stock was subject to a written agreement dated April 1, 1965, between Husband, the corporation and Mr. Klein, the owner of the other 85 percent of the corporation's stock. The agreement provided that Husband's shares could not be sold, assigned, transferred or hypothecated to anyone other than the corporation or Mr. Klein without their prior written consent. If Husband desired to sell the stock, the corporation, first, and then Mr. Klein had the right to purchase the stock for its "computed value" or the price offered to Husband by any third party, whichever was *lower*. Upon Husband's death, permanent disability or discharge from employment without just cause, the corporation, first, and then Mr. Klein had the right to purchase the stock for its full "computed value." If Husband voluntarily quit his employment or was terminated for just cause, the corporation, first, and then Mr. Klein had the right to purchase the stock for 70 percent of its "computed value." In the event of sale under any circumstances, the purchase price was payable by the corporation or Mr. Klein 25 percent cash on consummation of sale and 15 percent per year thereafter. "Computed value" was to be determined by a formula based primarily on the book asset value of the corporation with certain adjustments but excluding goodwill. At the time of trial the "computed value" of the stock was $43,873. The court fixed its value at 70 percent of its "computed value," $30,711.

First, it is argued that the court erred in failing to give consideration to goodwill. It is suggested that, should Hudson Jewelers be acquired by a substantial corporation, the stock would have a far greater value than that fixed by the agreement. This argument is unmeritorious. There was no evidence of any planned merger or acquisition of Hudson Jewelers by any other corporation, and, in the absence thereof, the corporation or Mr. Klein had the right to purchase the stock at not more than "computed value" should it be offered for sale.

Next, it is argued that, at least, the stock was worth its "computed value" of $43,873. In order to realize that potential value, Husband would have to die, become permanently disabled, be discharged from his employment without cause or be offered at least "computed value" by a third person. There is no evidence that the stock paid dividends, and the corporation was closely held. An offer from a third person to purchase a minority interest in a closely held corporation paying no dividends for full "computed value" would be an unlikely prospect. Discharge of Husband from the employment without just cause after 16 years' continuous employment was also unlikely. There was no evidence of any serious illness of Husband portending his death or permanent disability, and the prediction of such fortuitous events would have been purely speculative.

Under the circumstances disclosed by the evidence, and particularly in view of the restrictive conditions on the disposition of the stock and its resulting illiquidity, factors substantially affecting its value, the trial court was justified in assessing the value of the stock at 70 percent of its "computed value." Although that was its lowest value except in the event of a sale to a third person for less, it was the only value that was relatively certain. Moreover, while technically it does not go to the valuation of the stock, we are also mindful of the fact, as the trial court must have been, that the assets awarded to Wife were significantly more liquid than the stock awarded to Husband. Wife received in excess of $7,000 in cash and trust funds, stock valued at $1,304 as well as an undivided one-half interest in deeds of trust valued at $2,180 and producing a small amount of income. We conclude that the community assets and liabilities were equally divided in compliance with the mandate of Civil Code, section 4800.

## Spousal and Child Support

█ The decree orders Husband to pay to Wife $150 per month for the support of the 15-year-old child placed in her custody.[4] For support of Wife, Husband was ordered to pay $400 per month for one year commencing January 1, 1971, $300 per month for the succeeding year and $200 per month for the next year. Thereupon it was ordered that spousal support terminate. Wife contends that the award is grossly inadequate in amount and that the trial court further abused its discretion in providing for automatic termination of all spousal support at the end of three years. Although not all of Wife's arguments are well founded, we have concluded that these contentions have merit and that the trial court abused its discretion in the award of spousal support in several respects.

█ Initially, Wife points to evidence that Husband did a considerable amount of gambling; that he was either very lucky or very skillful; and that his winnings substantially exceeded his losses. She argues that the trial court should have considered Husband's gambling winnings in addition to his compensation from employment. Although findings of fact and conclusions of law were apparently not requested and we do not know, therefore, whether or not the court took into consideration the alleged winnings, we may assume, as has Wife, that it did not. Contrary to Wife's assertion, the evidence does not establish as a matter of law any longstanding pattern of winnings in excess of losses. Moreover, the Husband testified that he had ceased any significant gambling after the separation of the parties

[4]Husband was also ordered to pay for any extraordinary medical and dental care and to provide medical insurance for this child.

in September 1969 because of the unavailability of venture capital. Under these circumstances, had the court attributed any substantial future income to Husband from gambling and based support orders thereon, it would have had the undesirable and unhealthy effect of encouraging or compelling Husband to renew his gambling with the concomitant danger of a complete dissipation of his employment income from which he could reasonably support himself and his family. The trial court was fully justified, therefore, in basing the support orders solely on Husband's income from his employment, and we base our review thereon.

■ We consider first the award of $400 per month for calendar year 1971. At the outset, we deem it appropriate to comment on the changes wrought by enactment of The Family Law Act (Stats. 1969, ch. 1608, operative January 1, 1970). Under the preexisting law an award of spousal support rested in the judicial discretion of the trial court upon consideration of the circumstances of the parties, but one of the circumstances to be considered was the comparative marital fault of the parties. (See former Civ. Code, § 139; *Nunes* v. *Nunes,* 62 Cal.2d 33, 38 [41 Cal.Rptr. 5, 396 P.2d 37].) There was involved "a concept of granting support to 'the 'innocent' or against the 'guilty.' " (Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) p. 139, § 3.3; see *Arnold* v. *Arnold,* 76 Cal.App. 2d 877, 885-886 [174 P.2d 674]; *Webber* v. *Webber,* 33 Cal.2d 153, 157-158 [199 P.2d 934].) Under The Family Law Act the matter of spousal support is still addressed to the judicial discretion of the trial court upon a consideration of "the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse." (Civ. Code, § 4801, subd. (a).) However, the specific circumstances now mentioned in the statute (the duration of the marriage and the ability of the supported spouse to engage in gainful employment) have long been among the circumstances considered by the courts in making awards of spousal support. (See The California Family Lawyer (Cont.Ed.Bar 1963) § 28.23, pp. 1333-1336 and cases cited; Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) *supra.*) Thus, the change effected by Civil Code, section 4801 was the elimination of the consideration of the comparative marital fault of the parties and the "concept of granting support to the 'innocent' or against the 'guilty.' " (See Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) *supra,* § 3.3, pp. 139-140.) In determining the need for, the amount of and the duration of spousal support under The Family Law Act the court is to ignore marital fault and is to base its determination solely on the circumstances of the parties, including the duration of their marriage and the ability of the supported spouse to engage in gainful employment. (Civ.

Code, § 4801, subd. (a).) " 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' [Citation omitted.] '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as ability to earn and actual earnings.' [Citation omitted.]" (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249]; see also the enumeration of factors to be considered set forth in The California Family Lawyer (Cont.Ed.Bar 1963) *supra.*)

We are hampered in several respects in ascertaining the circumstances of the parties as determined by the trial court. In the first place, as previously noted, findings of fact were apparently not requested, and none were made. Secondly, at the beginning of trial the parties stipulated that Wife should have custody of both children as she apparently had had since the separation of the parties. Accordingly, the evidence adduced as to the reasonably necessary living expenses of the parties was based on the assumption that Wife would have custody of both children. Apparently, between the time of trial in September 1970 and the date of judgment, June 4, 1971, there was some agreed change, for custody of the older child was ultimately vested in Husband. Apparently no evidence of the reasonably necessary living expenses of the parties based on the new arrangement was presented to the trial court. In respect to that problem, therefore, we are in as good (or poor) position as was the trial court. In respect to the overall problem created by the absence of findings, we observe that the parties stipulated to many of the pertinent facts in the court below and have agreed on them on their briefs on appeal, and other pertinent facts are both obvious and uncontroverted. In respect to facts that may have been in controversy in the court below, we base our review on the evidence most favorable to Husband.

Before turning to the essential facts and figures, we observe that there is authority for the proposition that a trial court may consider as a circumstance affecting the amount of spousal support to be awarded whether the supported spouse has made adequate effort to find suitable employment between the time of the separation and the time of trial. (See *Webber* v. *Webber, supra,* 33 Cal.2d at p. 160.) Although neither party makes a point of it, we observe that, although one year had passed since the separation of the parties, at the time of trial Wife was not employed and had not yet commenced the real estate course or college courses she testified she intended to undertake. On the other hand, we note that during this period Wife had custody of both children, including the older boy whose behavioral or emotional problems had required Wife to terminate her schooling

and her short employment in 1966. Under these circumstances and in the absence of other evidence, it was not unreasonable for Wife to defer seeking employment or preparation for employment during this period.

The stipulated facts disclose that Husband's compensation from employment averaged in excess of $2,000 per month after deduction of taxes and exclusive of the $150 per month expense allowance. The uncontradicted evidence establishes that the parties were accustomed to a high standard of living. In addition to the evidence mentioned above in the statement of facts, the evidence was uncontradicted that Wife was accustomed to spending liberally for such items as clothes and beauty salons. During the course of the litigation Wife submitted several statements setting forth the claimed expenses for her and the two children in her custody. One prepared with the assistance of her accountants and based on computations relating to the overall expenditures of the parties in years past was in excess of $1,700 per month. Another submitted in connection with an order to show cause to modify a temporary support order claimed $1,136 per month. At trial a statement was submitted showing $1,265.60 per month. As previously noted, these statements included amounts for the support of the older child whose custody was subsequently given to Husband, and we safely assume that the trial court deducted a suitable amount for the support of this child and, further, that he discounted substantially some of Wife's claimed expenses. Nevertheless, we have no hesitancy in concluding that, even granting the necessity of some reduction in the standard of living, the reasonably necessary living expenses for Wife substantially exceed $400 per month and those for Wife and the 15-year-old child placed in her custody substantially exceed $550 per month.

At trial, Husband testified that his reasonably necessary living expenses, exclusive of spousal and child support payments, amounted to $869 per month. Considering his accustomed standard of living, it must be acknowledged that the itemized figures presented were not unreasonable. The figure did include, however, $138.08 per month in payments on two obligations to Bank of America which, by the time of judgment, it would appear Husband was no longer obligated to pay. Additionally, the figure included $116 per month for the lease of an automobile. Inasmuch as the use of the automobile accounted in large part for the $150 monthly expense allowance received by Husband from his employer, a substantial portion of the lease payment should be paid out of the expense allowance. Of course, in view of the judgment, Husband was required to pay $1,875.80 attorneys' fees and costs to Wife's attorneys at the rate of $75 per month. In any event, taking Husband's figures at face value and adding thereto a reasonable amount for the support of the 17-year-old child whose custody he was awarded, say

$250 per month, there would still remain about $900 per month available from Husband's employment income for the support of Wife and the child in her custody. Actually, the figure is even higher, for Husband's income taxes would be reduced substantially from what they were in 1967, 1968 and 1969 because of the deduction available to Husband for the amount of support paid to Wife. (See *Huntington* v. *Huntington*, 120 Cal. App.2d 705, 713-714 [262 P.2d 104].)

Thus, the relevant circumstances are these: a marriage of some 17 years during which the wife was not expected to and did not work for compensation because of the lifestyle of the parties and the attention required by the minor children; a wife whose health apparently permits employment but who has, according to the evidence, no particular training or experience to qualify her for any employment that would produce an income anywhere comparable to her half of the community income during the marriage and who, at the time of trial, was not employed; uncontroverted testimony by Wife that she intended to undertake training and education to qualify her for suitable employment; substantial need by the wife and minor child placed in her custody for support; and existing ability, proven by employment of long duration, on the part of Husband to furnish such support. Under these circumstances and absent evidence of the wife's refusal to prepare herself for and seek employment in a reasonable time, it was an abuse of discretion to award to Wife only $400 per month for her support.[5]

We turn next to that portion of the judgment automatically reducing spousal support to $300 for the year 1972 and $200 for the year 1973. Having concluded that, on the basis of the present evidence, the award of $400 per month for 1971 was inadequate, it is obvious that, unless there is a substantial change in circumstances, the awards for the following years will also be inadequate. We assume that the automatic reductions provided for by the trial court were ordered for the dual purposes of encouraging

[5]We do not ignore Husband's obligation to pay $2,080 of the community obligations. We note that after trial but before judgment, Husband received in excess of that amount from his 1970 year-end bonus check. More importantly, by our holding, we do not mean to imply that every dollar not absolutely required by Husband for the current living expenses of himself and the minor child in his custody must be awarded to Wife as spousal or child support. Existing and unpaid obligations are certainly to be considered. In this vein, however, we deem it appropriate to make one comment with respect to the obligation from Husband to Wife in the amount of $4,263 plus interest ordered by the court to balance the division of community assets. To deny Wife and the minor child in her custody needed support which Husband had the ability to pay for the purpose of allowing Husband to accumulate funds, at the expense of such needed support, to pay this obligation at the end of four years, would be to distort the statutory scheme and, indirectly, contravene the statutory mandate that the community property be divided equally. (Civ. Code, § 4800.)

Wife to seek employment and, hopefully, avoiding future modification proceedings. Both are worthy purposes which we are loathe to discourage, but, nevertheless, orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations. (*Schammel* v. *Schammel,* 105 Cal. 258, 261 [38 P. 729]; *Philbin* v. *Philbin,* 19 Cal.App.3d 115, 122 [96 Cal. Rptr. 408]; *Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 824-825 [65 Cal.Rptr. 269].) Here, the evidence is that Wife was not employed during the marriage except for a very brief period; there was no evidence that she had experience, training or education to qualify her for suitable employment; she was not employed at the time of trial and, indeed, was just about to undertake a course of instruction in real estate and some college courses to prepare herself for employment. Under these circumstances her future earnings and earning capacity were completely unknown, and such unknown future developments are better left to modification proceedings which have been provided for that very purpose, than to automatic reduction provisions operative one and two years, respectively, in the future. (See *Engelberg* v. *Engelberg, supra.*)

It may be inferred from the express reference in Civil Code, section 4801, subdivision (a) to the factor of the supported spouse's ability to engage in gainful employment that the supported spouse is to be encouraged to seek such employment. This, however, has long been the policy of the law. (See *Lamborn* v. *Lamborn,* 80 Cal.App. 494, 498-499 [251 P. 943] as explained in *Webber* v. *Webber, supra,* 33 Cal.2d 153, 159.) In most instances, of course, substantial incentive for the wife to seek employment consistent with her duty to care for minor children in her custody will automatically be supplied by the husband's inability to pay sufficient child and spousal support to support her and the children in her custody at the same standard as that prevailing prior to dissolution of the marriage. If this be deemed insufficient, there would be no impropriety in the court's pointing out to the supported spouse the possibility of modification proceedings to reduce support should she unreasonably delay or refuse to seek employment. ■ When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with her or his ability, of course, that factor may be taken into consideration by the trial court in fixing the amount of support in the first instance or in modification proceedings. (*Lamborn* v. *Lamborn, supra.*) However, where there is no evidence of any unreasonable delay or willful refusal of the supported spouse to seek employment consistent with her or his health and parental responsibilities and when the other party has the ability to pay the needed support, it is inappropriate to make an order for support in an amount sub-

stantially less than that needed. (*Webber* v. *Webber, supra,* 33 Cal.2d at p. 159.)

■ Much of what we have said in reference to those portions of the support order hereinabove considered is applicable also to that part of the judgment ordering absolute termination of spousal support at the end of three years. Based on the evidence before the court, the real ability of Wife to support herself is completely unknown and a matter of speculation. Considering her lack of experience and training and the many years she has been out of the labor market, the ability of Wife to support herself on a standard approaching the customary living standard of the parties is uncertain. By making an order terminating all spousal support at the end of three years without reserving jurisdiction to extend the period, the trial court put it out of its power to provide any support whatever for Wife after three years even if it should prove after maximum effort on her part she is unable to support herself in a reasonable fashion. (Civ. Code, § 4801, subd. (e).) Under the circumstances of this case that was an abuse of discretion.

We can only surmise that the genesis of this order was some notion that enactment of The Family Law Act constituted some sort of mandate by the Legislature to the courts to relieve husbands of any long, continuing obligation for spousal support. If this be true, we are constrained to state that this notion is mistaken. As previously noted, it may be inferred that the Legislature intended that the supported spouse be encouraged to seek employment. (Civ. Code, § 4801, subd. (a), *supra.*) It may be that the mandate of Civil Code, section 4800 for equal division of the community property was intended to afford husbands more equitable treatment than under the old law. We find nothing in The Family Law Act, however, indicating any legislative intent that a wife of a marriage of longstanding whose attentions have been devoted during the marriage to wifely and parental duties and whose earning capacity has therefore not been developed should be, at a time when the husband is reaching his peak of earning capacity, relegated to a standard of living substantially below that enjoyed by the parties during the marriage or to subsistence from public welfare. A husband with net earnings in excess of $2,000 per month owes to such a marriage partner and to the public a continuing responsibility for her future support consistent with the circumstances of the parties. While one of the circumstances to be considered is the "ability of the supported spouse to engage in gainful employment," another is "the duration of the marriage." (Civ. Code, § 4801, subd. (a).) Yet another is the parties' accustomed standard of living. (See *Brawman* v. *Brawman,* 199 Cal.App.2d 876, 882-883 [19 Cal. Rptr. 106]; *Pope* v. *Pope,* 102 Cal.App.2d 353, 370-371 [227 P.2d 867].)

In a long marriage during which the wife has not taken outside employment but has devoted herself to wifely and parental duties, the wife has not only failed to develop her own earning capacity, she has presumably contributed to the development of the husband's earning capacity. In many, if not in most, cases the established employment or earning capacity of the husband constitutes the most valuable economic asset of the parties. While this economic attribute is not of such a character as will permit its division as property (*Todd* v. *Todd,* 272 Cal.App.2d 786, 793 [78 Cal.Rptr. 131]), it is not to be ignored in considering the problem of continuing support. (See *Todd* v. *Todd, supra; Brawman* v. *Brawman, supra,* 199 Cal.App.2d at pp. 882-883.) In the case at bench, after a 17-year marriage during which Wife was not employed outside the home and the parties had attained a substantial standard of living, it would be grossly inequitable to cut the wife off from any possibility of support after a period of three years and permit Husband to go his own way with his established earning capacity in excess of $2,000 per month developed during the marriage in the absence of evidence that Wife had substantial earnings likely to continue on a permanent basis.

### Accounting and Attorney Fees

The contention that the court abused its discretion in refusing to award Wife $500 for payment of accounting fees incurred by her in connection with the litigation is unmeritorious. The court may order the adverse party "to pay such amount as may be *reasonably necessary* for the cost of maintaining or defending the proceeding and for attorneys' fees; . . ." (Civ. Code, § 4370, subd. (a); italics added [formerly Civ. Code, § 4525, subd. (a)].) Reasonably necessary costs may include accounting services in an appropriate case. (See The California Family Lawyer (Cont.Ed.Bar 1963) § 24.17, pp. 1029-1030 and cases cited.) The costs must be "reasonably necessary" however. The trial court in the case at bench found they were not. Apparently the main product of the accounting services was an estimate of the necessary living expenses for Wife and the two minor children in excess of $1,700 per month which was based on an apportionment between the several members of the household of the expenditures made by the parties during the several years preceding their separation. This involved extensive work with the checks and check records. The court found this statement of no value and, in fact, characterized it as the "greatest exercise in futility" he had observed while on the bench. We are inclined to agree. In any event, there was no abuse of discretion in the court's refusing to make an award for this item.

Similarly, we find no abuse of discretion in the award of attorney fees in the amount of $1,800 as opposed to the $5,000 requested. Although

Wife's trial attorney testified that he had spent some 118 office hours on the case in addition to two one-half day appearances prior to trial and two and one-half days of trial time, the award that is authorized by Civil Code, section 4370, subdivision (a) is the amount reasonably necessary for maintaining or defending the proceeding. The trial attorney was the third attorney of record for Wife, and we are not advised of what work was done by her other attorneys prior to trial counsel's entering the case nor the amount, if any, Husband was ordered to pay to them. Except for the value of the Hudson Jewelers stock, neither the character nor value of the property of the parties was the subject of serious dispute. Nor was child custody a serious issue. Child and spousal support constituted the principal issues in dispute. The allowance of attorney fees in a dissolution proceeding is a matter best determined by the trial court in the exercise of its judicial discretion and, in the absence of a clear showing of abuse of discretion, its determination will not be disturbed on appeal. (*Primm* v. *Primm,* 46 Cal.2d 690, 696 [299 P.2d 231].) In respect to the allowance of attorney fees, no abuse of discretion appears.

### Disposition

That portion of the judgment making provision for spousal support is reversed. Because of the possible interrelation of child and spousal support, that portion of the judgment ordering Husband to pay $150 per month for the support of the younger child is also reversed. In all other respects, the judgment is affirmed. For the guidance of the trial court and parties on retrial of the support issues, attention is directed to *Hall* v. *Superior Court,* 45 Cal.2d 377, 381 [289 P.2d 431] and particularly to those portions of the opinion headnoted under numbers 1, 2, 3, 4 and 5.

Appellant shall recover her costs on appeal and, upon proper application in the trial court, shall be entitled to reasonable attorney fees for her prosecution of this appeal if such have not heretofore been awarded.

Gardner, P. J., and Kerrigan, J., concurred.