LYELL MITCHELL MAGRUDER, APPELLEE AND CROSS-APPELLANT, V. PATSY L. MAGRUDER, APPELLANT AND CROSS-APPELLEE.

209 N. W. 2d 585

Filed July 27, 1973. No. 38852.

Crites, Shaffer & Slavik, for appellant.

Michael V. Smith, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action commenced as one by the plaintiff husband for divorce. Previous to trial on the merits, L.B. 820, Laws 1972, p. 246, was enacted and the action proceeded as one for dissolution of the marriage under that act on the ground alleged in an amendment to the plaintiff's petition that the marriage was irretrievably broken. The defendant wife denied the marriage was irretrievably broken and prayed for a legal separation to allow time to effect a reconciliation.

The matter proceeded to trial and the court found that every reasonable effort to effect reconciliation had been made and that the marriage was irretrievably broken. The court ordered a division of property between the parties and granted the defendant alimony of $416.66 per month beginning September 15, 1972, to continue until either of the parties dies or the defendant remarries.

The defendant appeals, claiming that the alimony award is inadequate and that the court erred in appraising the property of the parties and in its division between them. The plaintiff cross-appeals, attacking the alimony award on the ground that the court erred in making it in the form of an annuity and also on the ground that it is excessive. The defendant requested that supersedeas bond be set. This was done and the bond furnished by her. Upon her application she was awarded $750 per month temporary support pending this appeal. The plaintiff on this appeal attacks the amount as excessive.

We modify the award of alimony and affirm the decree as modified.

The parties were married at Kirksville, Missouri, on May 20, 1962. At that time the plaintiff was completing a premedical course at Kirksville Teacher's College and working as a motel clerk. The defendant was then attending college half days and working in an abstract office in the afternoons. In the fall of that year the plaintiff entered medical school at Columbia, Missouri. The defendant continued both her employment and college attendance and commuted between Columbia and Kirksville. They lived in a mobile home purchased at cost from the defendant's father and her parents gave her the automobile in which she traveled between the two cities. In the spring of 1963 the defendant finished her college course and obtained a job teaching in the Columbia schools. The defendant continued to work and also obtained her Master's Degree during this time. The plaintiff continued in medical school and received his M.D. Degree in 1966. In 1963, 1964, 1965, and the first part of 1966, the parties were supported largely by the earnings of the defendant. The plaintiff's tuition was paid by grants and income from livestock he owned and which were cared for by an uncle.

In the year following his graduation from medical school, during a 1 year internship of the plaintiff in Des Moines, Iowa, the parties lived largely on the plaintiff's salary as an intern. The defendant had a small income from part-time employment. In 1967, the plaintiff entered the Air Force as a medical officer and after that the defendant was no longer employed. Following 2 years of active duty, the plaintiff entered the practice of medicine in an established medical partnership at Chadron, Nebraska. He prospered. In 1970, his first full year of medical practice, his adjusted gross income was $22,718. In 1971 it was $27,900, and he estimated his income for 1972 would be $36,000. At the time of trial the plaintiff was 32 and the defendant 28. Both

parties are in good health. They have no children.

The first apparent rift in the marriage occurred while the plaintiff was in the military service when he informed the defendant that he wanted a divorce and that other women looked good to him. The matter went no further until, shortly before the divorce action was filed, he made an unannounced departure from the home of the parties in Chadron and took up a separate residence. The parties did not live together thereafter.

The court determined the value of the property of the parties to be about $42,000 and ordered it divided equally between them. We have examined the evidence relative to the appraisal of the property and conclude that the valuations by the trial judge are not erroneous and are justified by the evidence. The division of the property is approved.

We next discuss the matter of alimony. Section 42-365, R. S. Supp., 1972, provides: "When dissolution of a marriage is decreed, the court' may order payment of such alimony by one party to the other as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." Section 42-366(6), R. S. Supp., 1972, provides that alimony may be ordered in addition to a property settlement award. Section 42-365, R. S. Supp., 1972, also provides that unless otherwise agreed by the parties in writing or by the order of the court, the alimony shall terminate upon the death of either party or the remarriage of the recipient.

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criteria under the statute as well as under the former decisions of this court is one of reasonableness. The relevant considerations will vary from case to case. See, Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173; Mandelberg v. Mandelberg, 187 Neb. 844, 195 N. W. 2d

148. The determination of whether it is reasonable to award alimony and if so how much takes into consideration all the circumstances of the parties, as well as the duration of the marriage and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children of the parties in the supported party's custody. § 42-365, R. S. Supp., 1972.

This court has held that alimony awards payable in the form of an annuity for life or some indefinite period of time are not generally desirable although they may be proper in some circumstances. Card v. Card, 174 Neb. 124, 116 N. W. 2d 21; Metschke v. Metschke, 146 Neb. 461, 20 N. W. 2d 238.

In the case at hand, both parties are young, both are in good health, and both are or can be self-supporting. The marriage having been dissolved, it does not appear desirable to have their lives bound together by financial ties which may continue for their lifetimes if the defendant does not remarry. On the other hand, the marriage did endure for about 9 years and during that time the defendant made substantial contributions to the future economic well-being of the parties. The parties at the time of the separation had just reached the point where they would begin to reap some of the economic rewards of their efforts. The defendant would have liked to have had the marriage continue. These considerations lead us to believe that the alimony to be awarded the defendant should be substantial, but in the light of the ages of the parties and the capacity of the defendant to ultimately be self-supporting in a teaching or secretarial capacity, we think the award should be payable over a relatively shorter period of time than that made by the trial court. We determine, therefore, that the defendant should receive monthly alimony for a shorter period of time, but the present value of the award should be an amount approximately equivalent to that made by the trial court. The alimony award is

thus modified as follows: The defendant shall receive monthly alimony in the amount of $833.33 for a period of 10 years and 2 months, beginning with the filing of our mandate in the trial court, but such alimony shall terminate upon the death of either party or the re-marriage of the defendant.

The award of temporary support of the defendant of $750 a month during the pendency of this appeal was not an abuse of discretion by the trial court and is affirmed.

The defendant is awarded an attorney's fee of $1,250 for the services of her attorney in this court.

AFFIRMED AS MODIFIED.

WHITE, C. J., dissenting.

I respectfully dissent. I cannot come to any other conclusion but that the alimony award in this case is grossly excessive and is not harmonious with the present statute creating the "no fault" provisions for the dissolution of a marriage. As the majority opinion points out, both parties are young (around 30 years of age), both are in good health, and both are, or can be, self-supporting. They have no children, and they are both educated, sophisticated, and cultured people. The award of over $100,000 in alimony, in my opinion, is unconscionable. It seems to me that the award in this case is a sub silentio approval of applying the harsh and punitive considerations present in the traditional picture of a lifetime marriage, with family and children, in many of the cases cited by the court prior to the enactment of the "no fault" divorce law. Even under our old law, there is no evidence to support, on the grounds of fault, an award of the income of earnings of the husband present in this case. It is true that the defendant in this case aided and furnished financial support to the plaintiff during the period of his education. She should be amply compensated for whatever investment and time she contributed in this area. But the new law specifically eliminates the element of fault

in the enactment of the considerations present in an award of alimony. It completely disregards the new factor placed in the statute, "and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." There are no children to interfere with her gainful employment. Despite that fact, this court awards alimony of over $100,000 to the plaintiff.

This issue presented here is very important, because it is abundantly apparent that the court, despite the statute, has determined to follow the traditional philosophy of fault. And if this be so, the plaintiff is entitled to a hearing in which this issue is explained, and if that should happen, we are back where we started from and in violation of the whole philosophy of the new statute.

My views on this matter are supported almost conclusively by the decisions and jurisdictions interpreted almost identically in the following statutes. It should be noted that our statutes were drawn and follow the "no fault" divorce statute of California.

There is no Nebraska case law on this issue under the new statute, and there is no pertinent legislative history. Therefore, other "no fault" divorce jurisdictions will be examined. The jurisdictions examined are only those which have judicial decisions interpreting a no fault divorce statute; these are Florida, Oregon, Iowa, and California.

FLORIDA: F.S.A. § 61.08 (West Pocket Part, 1972) provides: "(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party * * *. The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse.

"(2) In determining a proper award of alimony, the

court may consider any factor necessary to do equity and justice between the parties."

There appears to be only one Florida appellate decision in point. In Lefler v. Lefler, 264 So. 2d 112 (Dist. Ct. of Appeal, 4th Dist., 1972), the husband received as lump sum alimony his wife's interest in certain real and personal property. The wife attacked the alimony provisions. The court stated: Alimony's "* * * basic nature and purpose remains the same as heretofore, i.e., to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining." Therefore, to receive alimony under Florida's no fault divorce act, the party must show need and the ability of the other party to pay. Since the husband in Lefler could not show that he had need for the alimony, the judgment granting him such alimony was reversed. Inferentially, at least, it seems that except for the statutory adultery provision, Florida courts apply a two-part test of need and ability to determine alimony and ignore misconduct or fault.

OREGON: O.R.S. § 107.036 (Supp., 1971) provides:

"(1) The doctrines of fault and of in pari delicto are abolished in suits for * * * the dissolution of a marriage.

"(2) The court shall not receive evidence of specific acts of misconduct, excepting where child custody is an issue and such evidence is relevant to that issue, or excepting at a hearing when the court finds such evidence necessary to provide irreconcilable differences."

O.R.S. § 107.105 (Supp., 1971) provides in part:

"(c) For the support of a party, in gross or in installments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. * * * In making such support order, the court shall consider the following matters:

"(A) The duration of the marriage;

"(B)   The ages of the parties;

"(C)   Their health and conditions;

"(D)   Their work experience and earning capacities;

"(E)   Their financial conditions, resources and property rights;

"(F)   The provisions of the decree relating to custody of the minor children of the parties;

"(G)   The ages, health and dependency conditions of the children of the parties, or either of them; and

"(H)   Such other matters as the court shall deem relevant."

In Minovsky v. Minovsky, 500 P. 2d 1234 (Ct. of Appeals, Dept. 1, Ore., 1972), the trial court allowed testimony that the wife had been the only real source of support of the parties' daughter for a number of years. Husband also contended that the trial court, in allowing the wife $7,500 in lump sum alimony, considered other aspects of fault. The husband appealed the alimony award, contending that fault should not have been allowed into evidence under the Oregon no fault divorce act.

The appellate court affirmed the trial court's award of alimony to the wife: "It is justified in view of the parties' disparate earning abilities and financial conditions, plus the quite unusual circumstance that plaintiff married and brought to this country a wife unprepared by training, or even knowledge of the language, to financially fend for herself. To arrive at this conclusion, a court need not consider at all the previous marriage and the parties' relative participation in the upbringing of their daughter." Although the trial court may have considered fault, the appellate court felt that the decision could have been reached considering just the factors enumerated in the statute. Therefore, the trial court had reached a permissible result by perhaps examining impermissible factors. It seems clear that if the fault or guilt of either party had been the *only* reason for the trial court to have granted alimony, the appellate

court would not have allowed the decision to stand.

IOWA: I.C.A. § 598.21 (Pocket Part, 1972) provides: "When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified."

In a series of cases construing this provision, the Iowa Supreme Court arrived at this conclusion: "* * * (W)e determined from the legislative history of chapter 1266 that the intent and purpose of the revised statute was to eliminate the fault concept as a standard for granting dissolution of the marital relationship and held that not only the 'guilty party' concept must be eliminated as a factor but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money." In re Marriage of Tjaden, 199 N. W. 2d 475 (Iowa, 1972), referring to In re Marriage of Williams, 199 N. W. 2d 339 (Iowa, 1972). See, also, In re Marriage of Harrington, 199 N. W. 2d 351 (Iowa, 1972). After examining legislative history and other sources, the Iowa court felt that the overriding purpose of the no fault divorce act was to remove all considerations of fault from the entire divorce proceeding. "In fact, we find no dissent in the sources examined from the proposition that fault is not a factor to be considered in awarding property settlement or an allowance of alimony under the dissolution acts." In re Marriage of Williams, *supra*.

CALIFORNIA: Cal. Civil Code, § 4509, provides: "In any pleadings or proceedings for legal separation or dissolution of marriage under this part, * * * evidence of specific acts of misconduct shall be improper and inadmissible, except where child custody is in issue and such evidence is relevant to that issue, or at the hearing where it is determined by the court to be necessary to establish the existence of irreconcilable differences."

Cal. Civil Code, § 4801, provides: "(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse."

In re Marriage of Rosan, 24 Cal. App. 3d 885, 101 Cal. Rptr. 295 (4th Dist., Div. Two, 1972), appears to be a leading case interpreting the new California statute. In determining whether a wife's alimony award was sufficient, the court noted that: "Under the preexisting law an award of spousal support rested in the judicial discretion of the trial court upon consideration of the circumstances of the parties, but one of the circumstances to be considered was the comparative marital fault of the parties." The court concluded that "the change effected by Civil Code, section 4801 was the elimination of the consideration of the comparative marital fault of the parties and the 'concept of granting support to the "innocent" or against the "guilty." ' " Id. Therefore, California also appears to be among the jurisdictions which have eliminated fault or misconduct as a consideration in the granting of alimony.

The four jurisdictions surveyed all appear to disregard fault as a factor in the awarding of alimony. It is contended that "the alimony section is but a part of a total, new scheme of divorce law by which traditional conceptions of marital relationship are undergoing substantial changes, and a court should view the alimony proceeding in this new context." 34 U. Pitt. L. Rev. 493 (1972). The new context for divorce law under no fault is best summarized in this statement: "When a personal relationship with another under the institution

of marriage has deteriorated to the point that the parties can no longer live together and provide our society with the sort of stable socio-economic unit on which this country so depends, it is time to call a spade a spade and dissolve it without acrimony, moral judgments or benedictions." Henderson, Practice and Problems Under Nebraska's New Divorce Laws, 52 Neb. L. Rev. 1 at p. 23 (1972). Viewed from this perspective, a trial court should consider two broad factors in determining alimony: Social surroundings and the ability to help oneself. 34 U. Pitt. L. Rev. at 498. Social surroundings includes the length of the marriage and present health and age. The ability to help oneself includes amount of assets, ability to obtain employment, and the size of the income of the supporting spouse. Id. Consideration of these factors would provide sufficient alimony and would also "* * * destroy the state of secured indolence known as the 'alimony drone' by denying alimony to one who is able to be self-supporting." Id.

In conclusion, the thrust of Nebraska's new divorce law is that all divorce proceedings should be conducted without reference to fault. To allow references to fault or misconduct into evidence under the guise of setting alimony is a mere perversion of the Legislature's intent. Alimony "* * * should not be allowed as a matter of sympathy to the wife or as a penalty imposed for the misconduct of the husband." Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173 (1953) (Dictum).

The foundation of the court's decision is clearly a response and rejection of the fundamental philosophy of the new statute. I think this defendant should be liberally awarded and paid for the monetary investment that she has made to the plaintiff's education. I do not believe that she acquired over a $100,000 interest in her husband's earnings in the future.

McCown and Newton, JJ., join in this dissent.