MYRNA PYKE, APPELLEE AND CROSS-APPELLANT, V.
JAMES A. PYKE, JR., APPELLANT AND CROSS-APPELLEE.
321 N.W.2d 906

Filed July 9, 1982. No. 44239.

Thomas J. Garvey of Hascall, Jungers & Garvey, for appellant.

Albert L. Feldman of Harris, Feldman, Stumpf & Pavel, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, James A. Pyke, Jr. (appellant husband), appeals from a decree entered by the District Court for Sarpy County, Nebraska, on March 26, 1981. The decree dissolved the marriage of appellant husband and his wife, Myrna Pyke (appellee

wife), and further provided for the division of the property owned by the parties. In addition, the court awarded alimony to appellee wife. This appeal involves only the issue of the alimony awarded. We affirm.

James and Myrna Pyke were married in Floydada, Texas, on August 11, 1956. Two children were born of the marriage, both of whom have now reached their legal majority. One of the sons is fully employed and the other is a student at the University of Nebraska-Lincoln.

Appellant husband is a lieutenant colonel in the U.S. Air Force with 26 years of service. He is presently 47 years of age and has annual earnings from the Air Force in the amount of $39,000. Appellee wife, who is 45 years of age, has engaged, to some limited extent, in selling real estate and has had gross earnings of approximately $4,000 per year. Additionally, she has been employed in the past as a secretary in the civil service with a grade of GS-3, although she was eligible to be employed as a GS-4. The record discloses that the assets accumulated by the parties during their marriage consisted of $81,000 in cash and additional personalty in the amount of approximately $10,000. In addition, appellant husband will be eligible to receive a federal military retirement upon his separation from the service, which the record indicates is anticipated in approximately 2 years.

With regard to the matter of alimony, the court decree specifically provided as follows: "The respondent is presently a Lt. Col. in the United States Air Force, earning an annual salary of $39,000, and the petitioner, although unemployed at the present time, is capable of earning approximately $7,000 per year based upon the present current prevailing minimum wage. That based upon the foregoing earning capacity of the parties, the court finds that the respondent should pay to the petitioner as permanent

alimony the sum of $850 per month, commencing March 1, 1981, and a like amount on the first day of each month thereafter until the death of the respondent or the petitioner, or until further order of the court." The court specifically found that the alimony was not to terminate automatically upon the remarriage of the appellee wife but that such remarriage could be considered as a change of circumstance to be considered by the court at some future time, together with any other relevant circumstances in regard to the earning capacity of either of the parties.

The trial court further specifically found that although appellant husband, by reason of his service in the U.S. Air Force, would, upon retirement in 1983, receive the sum of $1,991.28 per month, said retirement pay was not an asset to be divided by the court but could be considered as a fund available to appellant husband for the payment of alimony.

Appellant husband argues to the court that the trial court erred in both setting the alimony at the sum of $850 per month and in not limiting it to a fixed time. He argues that the alimony should have been fixed at $650 per month for a set number of months. Our examination of the record does not lead us to that conclusion.

Neb. Rev. Stat. § 42-365 (Cum. Supp. 1980) specifically details how and when the trial court is to consider awarding alimony. The section, reflective of our case holdings, provides in part as follows: "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the sup-

ported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." See *Tuttle v. Tuttle,* 193 Neb. 397, 227 N.W.2d 27 (1975). In 1980 the Legislature of Nebraska amended § 42-365 and added a new paragraph which more fully indicated the Legislature's intent in adopting the section. The amendment provides as follows: "While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the *continued maintenance* or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate." (Emphasis supplied.) It seems clear to us that by amending this section the Legislature intended that the trial court, in the first instance, and this court, on review, were to look at the overall circumstances of the parties and to attempt, if possible, to provide for the award of alimony for such period of time and under such conditions as would minimize any substantial and unnecessary disruption in the lives of the parties occasioned by reason of the dissolution of marriage. That is not to say that the court is, in every instance, to grant to one of the spouses a lifetime annuity. It is simply to say that in each case the court must make an examination of the circumstances and attempt to enter an order which is fair and equitable under the circumstances. That notion is not new to the law.

Specifically, in *Magruder v. Magruder,* 190 Neb. 573, 576, 209 N.W.2d 585, 587 (1973), we said: "In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criteria under the statute as well as under the

former decisions of this court is one of reasonableness. The relevant considerations will vary from case to case." And in *Baird v. Baird,* 196 Neb. 124, 125, 241 N.W.2d 543, 545 (1976), we said: "In determining whether alimony should be awarded, the ultimate test is one of reasonableness."

As we examine the record in this case, taking into account the factors which we are required to consider in accordance with § 42-365, we cannot say that the trial court was incorrect in its award of $850 per month, nor do we believe that in reviewing the record de novo we should modify that award.

Appellant husband argues that the trial court has granted to the appellee wife a lifetime annuity, which should not be permitted, citing to us our decision in *Cole v. Cole,* 208 Neb. 562, 567, 304 N.W.2d 398, 401 (1981), wherein we said: "[A]llowance of alimony in the form of an annuity or requiring the husband to pay a fixed sum for an indefinite period of time is not favored, although we have on occasion upheld such awards where we deem them necessary or desirable." See, also, *Witcig v. Witcig,* 206 Neb. 307, 292 N.W.2d 788 (1980). The deficiencies, however, in appellant husband's argument in this regard are twofold. In the first instance, the court has not made the payment of alimony a "lifetime annuity" as suggested by appellant husband. The alimony is to terminate upon the death of either party, and may terminate upon the remarriage of appellee wife. Moreover, the decree specifically provides that the decree is subject to modification upon further order of the court. This modification may be considered by the court whenever there is any change reflected by "other relevant circumstances in regard to the earning capacity of either of the parties." If, upon retirement from the military by appellant husband, his income is significantly altered from that which it now is, the court may, under the decree, modify the

alimony, either decreasing it or increasing it as the circumstances justify.

The record in this case discloses that the appellee wife is probably entitled to receive alimony for more than 2 years. The court, however, is faced with a situation where it appears on the record at this time that the earning ability of both of the parties may be significantly changed during that time. It would appear that where, as here, the court is now mindful that a significant event is to occur in the near future which may alter the earning abilities of either of the parties, but the court is unable to determine what that amount is, an order such as that entered by the court in this case is appropriate.

In *Dunlap v. Dunlap,* 145 Neb. 735, 742, 18 N.W.2d 51, 54 (1945), we said: "There are cases, and we have so held, where the situation of the parties and the contingencies are such that the amount of alimony cannot be placed in a lump sum without danger that such allowance may prove unjust or inequitable to one or the other of the parties and it is therefore proper for the court to provide for the payment of a stated sum at fixed periods over an indefinite period." We believe that, like *Dunlap,* the situation in the instant case justifies the action taken by the trial court. In effect, the trial court is at liberty to review the matter upon appellant husband's retirement from the military service, should either party desire such a review to take place, but is not required to make such review unless asked to do so by one or the other of the parties.

One final issue is raised by the parties in this case, although, admittedly, the trial court properly handled the issue. The issue concerns itself with the trial court's determination that appellant husband's military retirement pay is not an asset to be divided by the court but may be considered as a fund available to appellant husband for the payment of alimony. We believe the trial court's analysis in that

regard in this case was correct, notwithstanding the action of our Legislature in adopting Neb. Rev. Stat. § 42-366(8) (Cum. Supp. 1980) and our decision in *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W.2d 844 (1981). In 1980 the Legislature amended § 42-366(8) to provide as follows: "If the parties fail to agree upon a property settlement which the court finds to be conscionable, the court shall order an equitable division of the marital estate. The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested."

All of this occurred, however, prior to the time the U.S. Supreme Court issued its opinion, on June 26, 1981, in *McCarty v. McCarty,* 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). In the *McCarty* case, the U.S. Supreme Court held that federal law precludes a state court from awarding a nonmilitary spouse a portion of the military spouse's government pension. In effect, the U.S. Supreme Court said in *McCarty* that military pensions are not to be considered part of the marital estate. We are bound by that decision and must afford federal military pensions an exemption from the provisions of § 42-366, notwithstanding the language of the section. However, a trial court, in determining what, if any, alimony should be awarded a spouse, may recognize that the spouse ordered to pay the alimony may have, by way of income for his own maintenance and support, a military pension or may have the proceeds of a military pension from which he may be able to make alimony payments, although the court cannot award an interest in the pension to the nonmilitary spouse. This is precisely what the trial court did in this case, and we believe it was, in all respects, correct. The judgment of the trial court is affirmed.

AFFIRMED.

McCown, J., concurring in part, and in part dissenting.

I concur in that portion of the majority opinion which determines that a military retirement pension is not an asset to be divided by the court or considered as a part of the marital estate, but may be considered as a source of income for the payment of alimony.

I dissent from that portion of the opinion which approves a decree which requires the husband to pay "as permanent alimony the sum of $850 per month . . . until the death of the respondent or the petitioner, or until further order of the court," and also provides that "alimony should not terminate automatically upon the remarriage of the petitioner, but that such remarriage may be considered as a change of circumstances to be considered by the court at some future date . . . ."

The majority opinion concedes that a permanent alimony award is contrary to the general rule in this state that allowance of alimony in the form of an annuity or requiring a husband to pay a fixed sum for an indefinite period of time is not favored. See *Cole v. Cole,* 208 Neb. 562, 304 N.W.2d 398 (1981).

Ordinarily the allowance of permanent alimony has been limited to cases in which the health of the recipient made such an allowance appropriate at the time of the dissolution of marriage. In the present case the recipient of alimony is 45 years old, at least normally healthy, and has been previously employed. Under such circumstances I see no justification for providing alimony of more than $10,000 per year for a longer period than 10 years at most.

The major problem with the decree in the present case, however, is that this court has now approved a provision that support alimony does not terminate automatically upon remarriage. Instead, the decree here provides that some future court may decide the effect of remarriage and at that time de-

termine whether or not alimony should be reduced, terminated, or continued.

Neb. Rev. Stat. § 42-365 (Cum. Supp. 1980) provides in part: "Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." The legislative policy reflected in that statute is clear. Unless the parties agree or there are unusual or special circumstances which are to be determined by the trial court at the time of entry of the decree, an alimony award terminates upon the remarriage of the recipient.

I find no justifiable or logical reason in the case at bar why the permanent alimony should not terminate upon remarriage. If future courts must now engage in the judicial process of determining whether a particular remarriage does or does not require the termination or reduction of permanent alimony support payments from a former spouse, there will be no end to the problems which are created. The trial court at the time of the entry of a dissolution decree should specify that alimony payments for support will not terminate upon remarriage only if there are special circumstances requiring such a provision at the time of dissolution, but the trial court should not leave the termination decision to some future court. To defer the issue of determining the obligations of support and maintenance required by consecutive marriages replaces specificity with uncertainty and confusion and ignores the realities of modern marital support provisions. Alimony payments in this case should terminate on remarriage of the recipient.

CLINTON, J., joins in this concurrence and dissent.