Argued November 25, 1975, affirmed January 12, reconsideration denied February 11, petition for review denied March 9, 1976

In the Matter of the Dissolution of the Marriage of
VANN, *Respondent,*
*and*
VANN, *Appellant.*
(No. 13264, CA 4703)
544 P2d 175

*Keith A. Mobley,* The Dalles, argued the cause for appellant. With him on the brief were Phipps, Dunn & Mobley, The Dalles, and Milo W. Pope, Milton-Freewater.

*Robert J. Morgan,* Milwaukie, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

**LANGTRY, J.**

Husband appeals from the denial of his motion to eliminate support payments for wife. The original decree was in September 1973. Among other things the decree provided that wife should be paid $125 per month support for a period of five years. The parties had been married for 25 years and at the time of their marriage wife was 16 years old and untrained for any occupation. The purpose of the support payments was to aid her for five years while she sought to improve her earning capacity.

The motion for elimination of the support payments was made in February 1975. The husband alleged changed circumstances in that his income had deteriorated since the time of the original decree, and his former wife was gainfully employed and living with a man to whom she was not married and providing him with living necessities.

At the hearing evidence was taken concerning husband's present income, compared with the income which he had in 1973 and years immediately prior thereto. Our perusal of the record indicates that the trial court correctly concluded " [t]hat the [husband's] income, although it has varied somewhat, is not substantially less than it was at the time of the original * * * Decree."

If there was a change of circumstances, justifying the motion, then, it was necessarily related to the allegations concerning wife's affiliation with the man allegedly living with her. In this regard the trial court found that wife had been living with the other man and had been paying the rent "and essentially supporting herself and that this relationship is about to terminate."

Three witnesses testified concerning the living situation which was the basis for these findings. One was the wife and the others were her grown daughter and son-in-law. From this evidence we conclude that the

trial court's findings mentioned above are correct. The other man was getting free rent and at least substantial free food paid for by wife and he was paying for all entertainment and several trips that wife and he had made together. However, the evidence also was that the other man had purchased other property to which he was going to move and that wife was not going to accompany him—in other words, this evidence indicated that their relationship as housemates was about to end. That the trial judge who heard the evidence believed this is evidenced by his statement in "Decision Denying Motion" that the other man "is about to move out and obtain other quarters * * *."

Wife testified that in spite of her efforts to find full-time employment she has obtained work as a waitress only for half days five days a week. Her salary and tips amount to about $250 a month. She is striving to make her employment full time.

In 1971 Oregon adopted the so-called "no-fault" marriage dissolution law declaring that " [t]he doctrines of fault and of in pari delicto are abolished in suits for * * * dissolution of a marriage * * *." The Act also provides that " [t]he court shall not receive evidence of specific acts of misconduct * * *." ORS 107.036(1) and (2). The Oregon Criminal Code of 1971 (ORS 161.005 et seq.) does not define as offenses such acts as adultery, fornication and lewd cohabitation.[1]

Therefore, we conclude that we may not deprive wife of the support payments previously ordered solely because of the living arrangements that were demonstrated to have existed. If the proof of the same living situation were also proof that she was not using the support money substantially for the purpose for which

---

[1] Husband relies strongly upon cases like *Garlinger v. Garlinger,* 129 NJ Super 37, 40, 322 A2d 190 (1974), where (out of context) the court said, "* * * it is unconscionable to compel a husband by his daily labor to support the divorced wife in idleness and immorality * * *." A full reading of that case does not convince us that it is at variance with our decision here; however, regardless of how it is construed, we do not consider *Garlinger* to be as persuasive at bar as is the posture of Oregon statutory law.

it was intended or that she had sufficient other income so that she no longer needed the support money, the result might well be different. At bar, however, we conclude, as did the trial court who saw and heard the witnesses, that the relationship with the other man was drawing to a conclusion and that the reasons for the support money provision remained unchanged. Therefore, we conclude that there was no change of circumstances.

Affirmed.

**FORT, J.,** dissenting.

A decree was granted in September 1973 dissolving the marriage of the parties. One of its provisions allowed the wife, respondent herein, alimony of $125 per month for a period of five years. A long series of post-decree proceedings have been instituted and disposed of, not here necessary to consider.

On February 10, 1975, the former husband, appellant herein, filed a motion to modify the decree by eliminating the alimony payment primarily because the former wife was now living with another man, and though they were not married, they were, except for the legal formalities necessary to a lawful marriage in this state, maintaining a relationship tantamount to that of husband and wife.

The trial court on May 8, 1975, entered its order denying the requested modification. In the course of its order it made the following findings:

"1. That although the Petitioner has been living with one Raymond Marsh, she has been paying the rent and essentially supporting herself and that this relationship is about to terminate.

"2. That there is no legal obligation on the part of Raymond Marsh to support the Petitioner.

"3. That the Respondent's income, although it has varied somewhat, is not substantially less than it was at the time of the original entry of the Decree.

"4. That there is not a sufficient change of circumstances to award the Respondent a modification as to the award of alimony."

The former husband appeals.

Respondent, Sally Vann, aged 42, testified that for a period of over one year prior to and at the time of the hearing she had been and then was living in another city with one Raymond Marsh in an apartment upon which she paid the rent. Both she and Mr. Marsh were employed, the latter as a foreman for a substantial concern, and she as a waitress. During this period they made vacation trips together which encompassed visits to Reno, Las Vegas and Mexico, all, she testified, at Mr. Marsh's expense. He also bought groceries "once in a while." Mr. Marsh, in turn, was also divorced and paying alimony and child support to his former wife, which was substantially increased, apparently during the time respondent and he have been living together.

Respondent's 26-year-old married daughter, a school teacher, confirmed that her mother and Mr. Marsh had been living together and that she and her husband had visited back and forth with them in both their homes during this period, overnight on several occasions. It is clear that Sally Vann and Raymond Marsh were living together and enjoying the major basic relationships common to husband and wife.

Recently in *York v. Place*, 273 Or 947, 544 P2d 572 (1975), the Supreme Court in a different context discussed the nature of the relationship existing between a man and a woman who though unmarried were living together in the relationship customarily present between a married couple. In holding that in such a situation the woman was presumed to have contributed her services gratuitously and was therefore entitled to nothing from the estate of the man, the court said:

"* * * The basis of this principle is that in the normal course of human affairs persons living together in a close relationship perform services for each other without

expectation of payment. Payment in the usual sense is not expected because the parties mutually care for each other's needs. Also because services are performed out of a feeling of affection or a sense of obligation, not for payment.

"A legal marriage creates a legal obligation of support. The principle we are considering, however, is grounded upon human experience and not a legal obligation.

"We conclude that the relationship of the plaintiff and the decedent was such as to raise the presumption stated in the quotation from Wilkes v. Cornelius, supra (31 Or 347); that is, that the services were performed gratuitously." 273 Or at 949-50.

I agree with the majority that the statutory purpose in allowing modification of an order of support is not to punish or to reward a spouse for conduct which may be deemed either meretricious or meritorious. It is to meet the economic needs and to reflect the economic capacities of the parties as they exist from time to time.

In the course of the hearing respondent testified:

"Q At the present time you are living with Mr. Marsh, is that correct, or he is living with you?

"A Yes.

"Q How long has that situation continued?

"A Pardon?

"Q How long have you been together in your apartment?

"A Since the 17th of February.

"Q Of 1974?

"A Yes.

"Q Now, since he is moving out does that mean that your relationship with Mr. Marsh ended?

"A No, not necessarily.

"Q During the time that he has lived at your apartment has he contributed in any way to the rent, made any payments?

"A No, sir.

"Q In effect you are supporting him, is that correct? You are taking care of his obligations to provide him shelter?

[ 37 ]

"A If you want to word it that way, yes.

"Q And do you buy the food for yourself and Mr. Marsh as well?

"A No.

"Q What expenses then, ordinary living expenses, does he take care of?

"A That and our entertainment and trips.

"Q He pays all the expenses on the trips?

"A Yes."

Continuing later, she testified:

"Q Was there a time when Mr. Marsh was going to go back to his estranged wife?

"A Yes.

"Q Did that cause you some emotional upset?

"A Of course.

"Q Your relationship with Mr. Marsh is good, is it not; you are good friends and good companions?

"A Yes.

"Q You expect this relationship to continue for the foreseeable future?

"A That's something I can't say.

"Q Is it your wish that it continue?

"A Sometimes, sometimes not."

Despite the fact that common law or de facto marriage is not recognized in Oregon, it does not necessarily follow that once alimony has been awarded in a decree dissolving a valid marriage, conduct by the former spouse of the kind here involved may not well demonstrate, either alone or in connection with other factors, such change of circumstances as to warrant a modification or even elimination of the support commonly known as alimony. The former wife has been relieved of all obligation to support the teenage son who is now in the custody of the father, and he has that full responsibility. She is now employed and earns $250 or more a month. She has also received substantial contributions from Mr. Marsh, whether considered as earned or gratuitous, and she is receiving interest on upwards of $16,000. None of these things was she receiving at the time of the divorce. The evidence here, in my view, did establish a substantial change of cir-

cumstances since the divorce decree. I conclude the decree should be modified by eliminating the $125 a month support award.