LILA H. ELSE, APPELLEE, V. DELMER L. ELSE, APPELLANT.
367 N.W.2d 701

Filed May 10, 1985.    No. 84-173.

Andrew J. McMullen, for appellant.

John E. Dier, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Delmer L. Else appeals the decree of dissolution entered in the district court for Phelps County regarding his marriage with Lila H. Else. We affirm the district court's decree as modified.

After a trial the district court entered its decree containing a finding that the marriage of Lila and Delmer Else was irretrievably broken and provisions for a division of property and alimony.

The decree required Lila to pay Delmer alimony of $50,000 in annual installments of $5,000 for 10 years, "subject however, to the limiation [sic] that the said alimony shall terminate on the death of either the petitioner or the respondent, upon the remarriage of the respondent, or upon the co-habitation of the respondent with a women [sic] other than the petitioner out of wedlock."

Delmer complains that the division of property and the amount of alimony are incorrect. Additionally, Delmer contends the district court was incorrect in decreeing that alimony payable to Delmer would terminate upon Delmer's cohabitation with a woman other than Lila but unmarried to such other woman.

Although Delmer complains about the division of property and amount of alimony ordered by the district court, there is no bill of exceptions. Consequently, we review the record to determine whether the pleadings support the judgment entered by the trial court. See *Lum v. Mattley*, 208 Neb. 789, 305 N.W.2d 878 (1981).

The question of law presented is actually one of statutory construction, whether Nebraska statutes concerning dissolution of marriage authorize a court to insert into a decree a condition for termination of alimony upon the recipient's

cohabiting with one of the opposite sex to whom the alimony recipient is not married.

Nonexistent at common law, divorce is a matter within the exclusive and supreme province of the Legislature, subject to limitations imposed by the Constitutions, state and federal. See, *Larsen v. Erickson*, 222 Minn. 363, 24 N.W.2d 711 (1946); *Moran v. Moran*, 173 So. 2d 916 (Miss. 1965); *Young v. Young*, 207 Ark. 36, 178 S.W.2d 994 (1944); *The People ex rel. Doty v. Connell*, 9 Ill. 2d 390, 137 N.E.2d 849 (1956). In *O'Neill v. O'Neill*, 164 Neb. 674, 678-79, 83 N.W.2d 92, 95 (1957), this court stated: "[T]he legislative authority of the state has full control over the mode, manner, time and place of the proceedings for divorce and generally of the procedure in actions for divorce."

In order to ascertain the intent of the Nebraska Legislature regarding alimony in terms of the question raised in this appeal, we must place current statutes in their historical perspective. Before the present statutes, Nebraska's divorce laws specified grounds which included adultery, physical incompetence, imprisonment for 3 years or life, willful abandonment, habitual drunkenness, incurable insanity, and extreme cruelty. See Neb. Rev. Stat. §§ 42-301 and 42-302 (Reissue 1968). Further, except in the case of an adulterous wife, a court was empowered to order alimony as suitable support of a wife. See Neb. Rev. Stat. § 42-318 (Reissue 1968).

In 1972 the Nebraska Legislature made sweeping and fundamental changes in statutes governing divorce. In order to reduce guilt and conflict as incidents of divorce, as well as minimize bitterness resulting from attempts to place blame for an unsuccessful marriage with either husband or wife, the Nebraska Legislature enacted legislation eliminating the entire conceptual structure of fault as a requisite for a divorce. Under the new law adopted in 1972, a spouse is no longer required to make specific complaint about the other spouse's misconduct; instead, the allegation that a marriage is "irretrievably broken" is the sole allegation necessary for dissolution of a marriage. See Neb. Rev. Stat. § 42-353 (Reissue 1984). To dissolve a marriage a court need only find that a marriage is "irretrievably broken." See Neb. Rev. Stat. § 42-361 (Reissue 1984). In this

manner a divorce is granted to both husband and wife without any finding or allocation of fault on the part of either party.

The law revised in 1972 also provided:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . . [O]rders for alimony may be modified or revoked for good cause shown . . . . Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient.
>
> . . . The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative *economic circumstances* and the other criteria enumerated in this section make it appropriate.

(Emphasis supplied.) Neb. Rev. Stat. § 42-365 (Reissue 1984).

" ' "Jurisdiction of the court in matters relating to divorce and alimony is given by the statute, and every power exercised by the court with reference thereto must look for its source in the statute, or it does not exist." . . .' " *Detter v. Erpelding*, 176 Neb. 600, 614, 126 N.W.2d 827, 834 (1964); *Sosso v. Sosso*, 196 Neb. 242, 242 N.W.2d 621 (1976).

When enacting § 42-365 in 1972, the Legislature had ample opportunity to retain misconduct of a spouse or former spouse as a factor to be considered in determining whether to allow or continue alimony. However, misconduct as a bar to alimony, before or after divorce, was not retained by the Legislature. Rather, receipt of alimony depends on "economic circumstances" described in the statute adopted in 1972.

> Alimony is not awarded as a reward to the receiving spouse or as punishment of the spouse against whom it is

charged. It is an effort, insofar as is reasonably possible, to rectify the frequent economic imbalance in the earning power and standard of living of the divorced husband and wife. Its continuation is not dependent on the good conduct of either spouse.

*Drummond v. Drummond*, 267 Ark. 449, 453, 590 S.W.2d 658, 661 (1979). The Legislature has dictated that financial issues between the parties, such as alimony, shall be disposed on the basis of economic needs of a spouse or former spouse. Were § 42-365 to be interpreted in such a manner that misconduct by itself was determinative of spousal support, such interpretation would reinsert fault as a factor or criterion regarding alimony, in derogation of the clearly indicated legislative intent to the contrary. In a system of "no fault" divorce, spousal misconduct alone or fault by itself does not determine whether a spouse is entitled to alimony. See, *Chapman v. Chapman*, 498 S.W.2d 134 (Ky. 1973); *Dixon v. Dixon*, 107 Wis. 2d 492, 319 N.W.2d 846 (1982); *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa 1972); *Vann and Vann*, 24 Or. App. 31, 544 P.2d 175 (1976); *Boyd v. Boyd*, 421 A.2d 1356 (Me. 1980).

However, cohabitation, together with a showing that such arrangement improved a former spouse's overall financial condition, might warrant a modification of alimony. *Roth v. Roth*, 218 Neb. 417, 355 N.W.2d 516 (1984).

We note that legislatures of some states have enacted statutes which make cohabitation in and of itself a bar to a former spouse's continued receipt of alimony. See, Ala. Code § 30-2-55 (repl. 1983) ("living openly or cohabiting with a member of the opposite sex"); Cal. Civ. Code § 4801.5 (West 1983) ("cohabiting with a person of the opposite sex"); Conn. Gen. Stat. Ann. § 46b-86 (West Supp. 1984) (cohabitation); Ga. Code Ann. § 19-6-19 (1982) (voluntary cohabitation continuously and openly in a "meretricious relationship with a person of the opposite sex").

"Public policy concerning divorce and its incidents is a matter for the Legislature, not the courts, to decide." *Weber v. Weber*, 200 Neb. 659, 664, 265 N.W.2d 436, 440 (1978). " 'Divorce and its incidents are matters of public concern over which the Legislature has authority. What policies to adopt concerning its regulation are for it to decide and are not for the

courts. . . .' " *Detter v. Erpelding, supra* at 614, 126 N.W.2d at 834.

Unquestionably, the matter of divorce is a legislative prerogative. The Legislature is the appropriate forum for resolution of questions concerning public policy. With respect to questions about a statute, our role is limited to interpretation and application of statutes, irrespective of our personal agreement or disagreement with a particular legislative enactment, so long as a questioned statute does not violate a constitutional requirement. Whether a court considers particular legislation as wise or unwise is irrelevant to the judicial task of construing or applying a statute. Our role involving legislation is akin to that of another brigade, ". . . not to make reply . . . not to reason why." However, we hope for a fate better than that which befell the other brigade.

The condition for termination of alimony upon Delmer's cohabitation, as ordered by the district court, is incorrect and is deleted from the judgment entered by the district court. With such modification the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.

KRIVOSHA, C.J., concurs in the result.