STATE OF NEBRASKA, APPELLEE, V.
RODNEY NEISS, APPELLANT.
619 N.W. 2d 222

Filed November 9, 2000.   No. S-99-1361.

Bradley E. Nick, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellant.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 1998, Rodney Neiss was arrested and subsequently charged with driving while under the influence of alcoholic liquor (DUI). The State alleged that Neiss had previ-

ously been convicted of DUI on June 10, 1989, and on January 24, 1996; therefore, the State sought enhancement of Neiss' sentence pursuant to Neb. Rev. Stat. § 60-6,196(2)(c) (Supp. 1999). On March 30, 1999, Neiss appeared in the county court with counsel and entered a plea of guilty to the charge of DUI. After accepting Neiss' plea and adjudging him guilty of DUI, the county court scheduled an evidentiary hearing to determine whether Neiss' sentence should be enhanced because of prior DUI convictions. That hearing was conducted, and on September 9, the county court entered a finding that the January 24, 1996, DUI conviction could be utilized to enhance the sentence, but that the State was barred from utilizing the June 10, 1989, conviction for enhancement purposes.

Prior to passage of 1998 Neb. Laws, L.B. 309, trial courts in Nebraska could look back only 8 years, for purposes of sentence enhancement, to determine if a person convicted of DUI had prior DUI convictions. After L.B. 309 went into effect on April 19, 1998, however, courts could look back 12 years to prior DUI convictions for enhancement purposes. See § 60-6,196(2). The county court determined that applying L.B. 309 to look back 12 years for a prior DUI conviction would have the effect of giving the amended statute an ex post facto application. Thus, the county court, utilizing only the 1996 prior conviction, found Neiss guilty of second-offense DUI and sentenced him on that basis.

The State sought and obtained leave to appeal the judgment to the district court, claiming that the county court erred in finding that the State could not utilize Neiss' 1989 DUI conviction for enhancement purposes. On November 9, 1999, the district court, for reasons substantially the same as later articulated by this court in *State v. Hansen*, 258 Neb. 752, 605 N.W.2d 461 (2000), determined that there was no ex post facto violation in applying the 12-year look-back provision of § 60-6,196(2)(c); thus, the district court reversed the judgment of the county court and remanded the matter to the county court for resentencing as a third-offense DUI. Neiss timely appealed the district court's judgment to the Nebraska Court of Appeals.

On appeal to the Court of Appeals, Neiss assigned as error the district court's (1) reversing the county court's decision to sen-

tence him as a second-offense DUI, as opposed to a third offense, and (2) reversing the decision and remanding the case to the county court for resentencing as a third-offense DUI, because Neiss had been "placed legally in jeopardy" in the county court. Under his second assignment of error, Neiss argued that he had been placed legally in jeopardy under the plain language of Neb. Rev. Stat. § 29-2319 (Reissue 1995) and that the district court's decision must therefore be reversed.

The State moved for summary affirmance pursuant to Neb. Ct. R. of Prac. 7B(2) (rev. 2000) on March 15, 2000. Neiss conceded that *State v. Hansen, supra,* was controlling and dispositive of his first assignment of error. Regarding Neiss' second assignment of error, the State argued that the Court of Appeals' decision in *State v. Werner,* 8 Neb. App. 684, 600 N.W.2d 500 (1999), was controlling. In *State v. Werner,* the Court of Appeals addressed a procedural situation virtually identical to the facts in the case at bar. However, the defendant in that case argued that the district court's remand to the county court with directions to find her guilty of third-offense DUI violated her right to be free of *double jeopardy.* The Court of Appeals determined that the district court's reversal of the county court's decision that the defendant was guilty of second-offense DUI and its remand of the case to the county court with directions to find the defendant guilty of third-offense DUI did not violate the defendant's right to be free of double jeopardy. *Id.* In doing so, the Court of Appeals conducted its analysis under constitutional double jeopardy principles as opposed to a purely statutory analysis pursuant to § 29-2319.

In his objection to summary affirmance, Neiss again urged the Court of Appeals to analyze his case under the plain language of § 29-2319, as opposed to a constitutional double jeopardy analysis. The Court of Appeals, however, granted the State's motion for summary affirmance with the following entry on May 2, 2000: "Motion of appellee for summary affirmance sustained; judgment affirmed. See rule 7B(2)."

We granted Neiss' petition for further review to analyze whether he was "placed legally in jeopardy" within the meaning of § 29-2319 at the time that the county court determined Neiss to be a second offender and sentenced him accordingly.

## ASSIGNMENT OF ERROR

In his petition for further review, Neiss assigns that the Court of Appeals erred in sustaining the State's motion for summary affirmance of the district court's reversal of the decision and remand of this case to the county court for resentencing as a third-offense DUI, based on the fact that Neiss had been placed legally in jeopardy in the county court within the meaning of § 29-2319.

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Hernandez*, 259 Neb. 948, 613 N.W.2d 455 (2000).

## ANALYSIS

Neb. Rev. Stat. § 29-2317 (Reissue 1995) provides, inter alia, that a prosecuting attorney may appeal any ruling or decision of the county court made during the prosecution of a cause by presenting to the court a notice of intent to take an appeal to the district court with reference to the rulings or decisions of which the complaint is made. That procedure was utilized in the instant case.

Section 29-2319, however, provides in pertinent part:

> (1) The judgment of the court in any action taken under the provisions of [§] 29-2317 . . . shall not be reversed nor in any manner affected when the defendant in the trial court *has been placed legally in jeopardy*, but in such cases the decision of the district court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may thereafter arise in the district.

(Emphasis supplied.)

The issue to be decided in this appeal is whether Neiss was "placed legally in jeopardy" under the meaning of § 29-2319 when the county court determined that Neiss' 1989 DUI conviction could not be utilized for enhancement purposes and he was sentenced for second-offense DUI.

We have addressed the meaning of being "placed legally in jeopardy" in analyzing Neb. Rev. Stat. § 29-2316 (Reissue 1995) in the context of resentencing proceedings after a reversal by an appellate court. While § 29-2316 deals specifically with appellate courts and § 29-2319 deals with a district court sitting as an appellate court, the relevant language in § 29-2316 is identical to the relevant language in subsection (1) of § 29-2319. Both statutes state that the judgment of the trial court in any action where the prosecutor has appealed "shall not be reversed nor in any manner affected when the defendant in the trial court has been *placed legally in jeopardy.*" We have, however, drawn a distinction between the finality and conclusiveness accorded to a trial verdict of acquittal (bars reprosecution) and the lack of finality accorded to the statutorily granted right of review of a defendant's sentence (does not invoke double jeopardy considerations). See, *State v. Wren,* 234 Neb. 291, 450 N.W.2d 684 (1990); *State v. Schall,* 234 Neb. 101, 449 N.W.2d 225 (1989).

In *State v. Wren, supra,* we analyzed the effects of § 29-2316 on our ability to reverse the sentencing decision of a lower court and impose a harsher sentence upon a defendant. In determining whether the defendant in *State v. Wren* had been placed legally in jeopardy as far as his sentence was concerned, we quoted *United States v. DiFrancesco,* 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980), and stated:

"The double jeopardy focus, thus, is not on the appeal but on the relief that is requested, and our task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rulings of this Court, nor even considerations of double jeopardy policy support such an equation."

*State v. Wren,* 234 Neb. at 295, 450 N.W.2d at 688. We determined that double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence, and we concluded that the defendant had not been *placed legally in jeopardy* within the meaning of § 29-2316 as far as his sentence was concerned. *State v. Wren, supra.* We therefore reversed the judgment of the district court and remanded the matter to the

district court with directions to impose a harsher sentence upon the defendant. Compare *State v. McDermott*, 200 Neb. 337, 263 N.W.2d 482 (1978) (district court's remand and imposition of stricter sentence upon defendant at county court level placed him legally in jeopardy because defendant had completely served his sentence prior to district court's decision to impose stricter sentence).

The issue in the instant case is slightly different, however. We must determine whether Neiss had been placed legally in jeopardy by virtue of the county court's determination, at the conclusion of the enhancement hearing, that the conviction in the case at bar was Neiss' second offense. Stated another way, are enhancement hearing determinations to be accorded finality and conclusiveness similar to trial verdicts of acquittal or is the review of an enhancement proceeding historically more similar to the review of a defendant's sentence? The U.S. Supreme Court recently considered a similar issue in *Monge v. California*, 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998).

In *Monge v. California*, the defendant was charged in state court with a felony and the State notified the defendant that it would seek to prove two prior conviction enhancement allegations. Under California's " 'three-strikes' law," a defendant convicted of a felony who has two qualifying prior convictions for " 'serious felonies' " receives a minimum prison sentence of 25 years to life; a defendant who has one prior serious felony conviction receives double the normal prison sentence. 524 U.S. at 724. After the defendant was found guilty, the proof of the two prior conviction allegations was argued before the court. The trial court found both prior conviction allegations applicable and sentenced the defendant accordingly. On appeal to the California Court of Appeal, the State conceded that there was not proof beyond a reasonable doubt on one of the prior conviction allegations at the enhancement proceeding but requested another opportunity to prove the issue on remand. *Id.* The Court of Appeal determined that remand for another sentence enhancement proceeding would violate double jeopardy principles. The California Supreme Court reversed the Court of Appeal's ruling that the Double Jeopardy Clause bars retrial of prior conviction allegations. *Monge v. California, supra.*

In affirming the decision of the California Supreme Court, the U.S. Supreme Court discussed the applicability of double jeopardy principles to sentencing proceedings. *Id.* The Court noted that its previous decision in *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981), "established a 'narrow exception' to the general rule that double jeopardy principles have no application in the sentencing context." *Monge v. California*, 524 U.S. at 730. In *Bullington v. Missouri, supra*, the Court determined that double jeopardy principles do apply to capital sentencing proceedings. The reasoning behind the decision in *Bullington v. Missouri* was that "the first jury's deliberations bore the 'hallmarks of the trial on guilt or innocence,' . . . the prosecution undertook the burden of establishing facts beyond a reasonable doubt, and the evidence was introduced in a separate proceeding that formally resembled a trial." *Monge v. California*, 524 U.S. at 730, quoting *Bullington v. Missouri, supra*. However, the Court distinguished the capital sentencing context from other sentencing proceedings by reasoning that

> the "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" that a capital defendant faces "are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial." . . . And we cited the "unacceptably high risk" that repeated attempts to persuade a jury to impose the death penalty would lead to an erroneous capital sentence.

*Monge v. California*, 524 U.S. at 731, quoting *Bullington v. Missouri, supra.*

In addressing whether double jeopardy principles apply to California's enhancement proceeding in *Monge v. California*, 524 U.S. 721, 731-32, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998), the Court stated:

> Even assuming, however, that the proceeding on the prior conviction allegation has the "hallmarks" of a trial that we identified in *Bullington*, a critical component of our reasoning in that case was the capital sentencing context. The penalty phase of a capital trial is undertaken to assess the gravity of a particular offense and to determine whether it warrants the ultimate punishment; it is in many respects a continuation of the trial on guilt or innocence of

> capital murder. . . . Because the death penalty is unique "in both its severity and its finality," . . . we have recognized an acute need for reliability in capital sentencing proceedings.

Quoting *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977).

The Court went further to point out that the procedural protections involved in capital sentencing proceedings are based on Eighth Amendment principles. Conversely, "[w]here noncapital sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command." *Monge v. California*, 524 U.S. at 734. The Court recognized that if it extended double jeopardy principles to statutory procedural protections, such as California's enhancement proceeding at issue in *Monge v. California*, there might be a disincentive that would diminish these sorts of important procedural protections. *Id.* Finally, the Court concluded that "the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context" in order to determine the truth of the allegations supporting the enhanced sentence. 524 U.S. at 734.

Similarly, in the instant case, we conclude that Neiss was not placed legally in jeopardy at the conclusion of the enhancement proceeding. First, we address the nature of the offense for which Neiss was charged and the nature of the enhancement proceeding under Nebraska's DUI law, § 60-6,196. We must determine whether Neiss was guilty of "second-offense DUI," making the prior conviction a necessary element of the offense, or whether the offense was simply "DUI," with the prior DUI convictions only enhancing the sentence. The Court of Appeals addressed this issue in *State v. Werner*, 8 Neb. App. 684, 600 N.W.2d 500 (1999).

In *State v. Werner*, the defendant contended that when the county court found her guilty of second-offense DUI, it acquitted her of third-offense DUI, thereby preventing resentencing as a third offense because it would subject her to reprosecution for the same crime and place her in double jeopardy. The Court of Appeals addressed the issue of whether, pursuant to § 60-6,196 (Reissue 1993), the proscribed offense is "third-offense DUI," making the prior convictions necessary elements of the offense, or whether the offense is simply "DUI," with the prior DUI convic-

tions only enhancing the sentence. Section 60-6,196(2) (Reissue 1993) provided that "[a]ny person who operates or is in the actual physical control of any motor vehicle while [under the influence of alcoholic liquor or of any drug] shall be guilty of a crime and upon conviction *punished* as follows . . . ." (Emphasis supplied.)

■ The Court of Appeals correctly determined that the plain language of the statute criminalizes the act of DUI and that the fact of prior offenses is irrelevant to the guilt or innocence of the defendant and is only relevant to the defendant's sentence. *State v. Werner, supra.* The relevant language in the current version of § 60-6,196(2) (Supp. 1999) is identical to the language examined by the court in *State v. Werner, supra.* Because we agree with the Court of Appeals' determination that the plain language of the statute criminalizes the act of DUI and that prior offenses are irrelevant to the guilt or innocence of a defendant, we conclude that Neiss was convicted of DUI and that the determination of whether it was his second or third offense was part of a separate enhancement proceeding.

■ Next, we address the issue of whether double jeopardy principles apply to the enhancement proceeding in the case at bar. The Supreme Court's decision in *Monge v. California,* 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998), makes it clear that even when an enhancement proceeding has the "hallmarks" of a trial because the applicability of prior convictions is argued before the trial court, double jeopardy principles do not apply to the proceeding, unless it is in the capital sentencing context. This is because noncapital sentence enhancement proceedings are not accorded the finality and conclusiveness similar to trial verdicts of acquittal. The Court reasoned, and we agree, that

> sentence enhancements [have never] been construed as additional punishment for the previous offense; rather, they act to increase a sentence "because of the manner in which [the defendant] committed the crime of conviction." . . . An enhanced sentence imposed on a persistent offender thus "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes" but as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

*Monge v. California*, 524 U.S. at 728, quoting *United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) (per curiam), and *Gryger v. Burke*, 334 U.S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948). In other words, a DUI offender is not receiving additional punishment for his or her *previous convictions*, but, rather, the offender is being penalized under § 60-6,196(2) *for persisting in committing* the offense of DUI. See *State v. Hansen*, 258 Neb. 752, 605 N.W.2d 461 (2000).

■ For these reasons, we hold that double jeopardy principles do not apply to DUI enhancement proceedings; thus, a district court is not precluded from reversing an erroneous enhancement determination and remanding the case to county court with directions to resentence the offender according to law. Neiss, however, argues that the language of § 29-2319 requires us to analyze the instant case under something other than double jeopardy principles. We do not agree.

■ As noted previously, in both *State v. Wren*, 234 Neb. 291, 450 N.W.2d 684 (1990), and *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989), we utilized Fifth Amendment principles in determining that double jeopardy considerations do not prohibit review and modification of a sentence under § 29-2316. Ordinarily, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *State v. McCracken, ante* p. 234, 615 N.W.2d 902 (2000). Our interpretation of the meaning of the phrase "placed legally in jeopardy" has not evoked an amendment to § 29-2316, nor has the identical phrase been amended in § 29-2319. We are persuaded that the Legislature intended to prevent offenders from being subjected to double jeopardy when the Legislature used the words "placed legally in jeopardy" in the context of both §§ 29-2316 and 29-2319. Nothing in the legislative history or in the actions of the Legislature since *State v. Schall, supra*, would lead us to conclude otherwise. Consequently, the protections afforded by § 29-2319 are no greater than or different from the double jeopardy protections afforded by the U.S. and Nebraska Constitutions. See *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999) (protection provided by Nebraska's double jeop-

ardy clause is coextensive with that provided by U.S. Constitution).

Thus, we determine that Neiss was not "placed legally in jeopardy" within the meaning of § 29-2319 at the time that the county court determined Neiss to be a second offender and sentenced him accordingly. Neiss' argument to the contrary is without merit.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err when it reversed the judgment of the county court and remanded the case to the county court with directions to resentence Neiss as a DUI third offender. The judgment of the Court of Appeals is therefore affirmed.

AFFIRMED.