JEREMY D. PARNELL, APPELLANT, V. GOOD SAMARITAN HEALTH SYSTEMS, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS GOOD SAMARITAN HOSPITAL, APPELLEE.

620 N.W.2d 354

Filed December 15, 2000.   No. S-99-925.

James D. Carson and Eric W. Kruger, of Rickerson & Kruger, for appellant.

Neil B. Danberg, Jr., Lyman L. Larsen, and Michael J. Leahy, of Stinson, Mag & Fizzell, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Jeremy D. Parnell sustained serious injuries in an automobile accident and received treatment at Good Samaritan Hospital (Good Samaritan). Good Samaritan filed a lien against a settlement obtained by Parnell pursuant to Neb. Rev. Stat. § 52-401 (Reissue 1998). The question presented in this appeal is whether § 52-401 constitutes unconstitutional special legislation because it provides an exception to the common fund doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 1996, Parnell was injured in a motor vehicle accident in Buffalo County, Nebraska. After the accident, Parnell received medical care at Good Samaritan. On November 11, 1997, Parnell entered into a settlement agreement with the alleged tort-feasor. The terms of the settlement acknowledged payment already made to Parnell in the amount of $400,000 and also provided for deferred lump-sum payments totaling $1,929,156 over a 40-year period.

Good Samaritan requested payment of unpaid bills in the amount of $56,043.73 and has perfected a lien, pursuant to § 52-401, against the proceeds of Parnell's personal injury set-

tlement. Parnell has received a check from the alleged tort-feasor's insurance company, dated November 10, 1997, and made payable to both Parnell and Good Samaritan in the amount of $57,039.28.

Parnell filed a declaratory judgment action seeking, inter alia, to have the district court determine that (1) Parnell's settlement was exempt from Good Samaritan's lien under Neb. Rev. Stat. § 25-1563.02 (Reissue 1995); (2) the amount claimed by Good Samaritan did not reflect the usual and customary charges for services rendered; and (3) § 52-401 was unconstitutional as special legislation under article III, § 18, of the Nebraska Constitution. Good Samaritan denied that there was a conflict between §§ 52-401 and 25-1563.02, alleged that § 25-1563.02 had no applicability to a lien perfected under § 52-401, and denied the unconstitutionality of § 52-401. In a counterclaim, Good Samaritan sought a declaratory judgment that its lien was valid in the amount of $57,039.28.

Good Samaritan filed a motion for summary judgment, and Parnell filed a motion for partial summary judgment. The district court denied Parnell's motion and granted Good Samaritan's motion, thereby dismissing Parnell's petition. The district court also granted summary judgment in favor of Good Samaritan on its counterclaim. The district court found that Good Samaritan had a hospital lien properly perfected, valid, and enforceable for services rendered to Parnell in the amount of $57,039.28; that this amount is the usual and customary value of the services actually provided by Good Samaritan to Parnell; that § 52-401 is constitutional; and that § 52-401 is not limited by § 25-1563.02. Parnell appeals.

## ASSIGNMENTS OF ERROR

Parnell assigns, restated, that the district court erred in (1) overruling his motion to compel discovery when the accounting records are needed to determine the usual and customary charges of Good Samaritan, (2) incorrectly determining that the amounts medical care providers actually receive for the services they render are not a relevant factor when determining the "usual and customary charges" under § 52-401, (3) granting Good Samaritan's motion for summary judgment when an issue

of material fact remained as to Good Samaritan's usual and cus-
tomary charges, and (4) not finding § 52-401 to be unconstitu-
tional special legislation.

## STANDARD OF REVIEW

■ Whether a statute is constitutional is a question of law;
accordingly, the Nebraska Supreme Court is obligated to reach
a conclusion independent of the decision reached by the court
below. *Dykes v. Scotts Bluff Cty. Ag. Socy., ante* p. 375, 617
N.W.2d 817 (2000); *State ex rel. Stenberg v. Moore*, 258 Neb.
738, 605 N.W.2d 440 (2000).

## ANALYSIS

We first note, with respect to Parnell's first three assignments
of error, that Parnell presented his argument with respect to "usual
and customary charges" to this court in *Parnell v. Madonna
Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999). In that case,
we rejected Parnell's claim that "usual and customary charges"
should be determined by considering the amounts actually col-
lected by a service provider, instead of the amount charged. *Id.*
Parnell conceded at oral argument that *Parnell v. Madonna Rehab.
Hosp., supra*, would be determinative of the issues presented in
the instant case as well. We agree. We decline to reconsider our
decision in *Parnell v. Madonna Rehab. Hosp.* and on that author-
ity, determine Parnell's first three assignments of error to be with-
out merit. We therefore turn to Parnell's remaining assignment of
error, claiming that § 52-401 is special legislation.

■ A legislative act constitutes special legislation, violative
of Neb. Const. art. III, § 18, if (1) it creates an arbitrary and
unreasonable method of classification or (2) it creates a perma-
nently closed class. *Bergan Mercy Health Sys. v. Haven, ante* p.
846, 620 N.W.2d 339 (2000); *Pfizer v. Lancaster Cty. Bd. of
Equal., ante* p. 265, 616 N.W.2d 326 (2000). When the
Legislature confers privileges on a class arbitrarily selected
from a large number of persons standing in the same relation to
the privileges, without reasonable distinction or substantial dif-
ference, then the statute in question has resulted in the kind of
improper discrimination prohibited by the Nebraska
Constitution. *Bergan Mercy Health Sys. v. Haven, supra.*

A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. *Id.*; *Big John's Billiards v. Balka, ante* p. 702, 619 N.W.2d 444 (2000). Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. *Bergan Mercy Health Sys. v. Haven, supra.*

The sole argument offered by Parnell in his appellate brief as to why § 52-401 is unconstitutional is that it deprives him of the benefits of the common fund doctrine. Section 52-401 provides, in relevant part:

> Whenever any person employs a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person claims damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the usual and customary charges of such physician, nurse, or hospital applicable at the times services are performed . . . .
>
> . . . .
>
> A physician, nurse, or hospital claiming a lien under this section shall not be liable for attorney's fees and costs incurred by the injured person in securing the judgment, settlement, or compromise, but the lien of the injured person's attorney shall have precedence over the lien created by this section.

The latter paragraph of § 52-401 quoted above was enacted by the Legislature in response to this court's decision in *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994). In *In re Guardianship & Conservatorship of Bloomquist*, this court held that liens under § 52-401 were subject to the common fund doctrine, such that lienholders were liable for their pro rata portion of the legal expenses and costs where they sought payment out of a judgment or settlement for the amount of a lien filed pursuant to § 52-401.

In response, the Legislature enacted 1995 Neb. Laws, L.B. 172, which amended § 52-401 to provide, as quoted above, that physicians, nurses, or hospitals claiming a lien under § 52-401 were not liable for attorney fees and costs incurred by the injured person in securing the judgment, settlement, or compromise. It is this language that Parnell argues invalidates § 52-401 as special legislation because, Parnell claims, persons with access to third-party payment for injuries, such as insurance, are treated differently from those without such access.

Parnell argues that our decision in *In re Guardianship & Conservatorship of Bloomquist, supra,* established that when either a subrogated third party or a lienholder is benefited by an award of funds to a tort victim, the benefited party must share in the costs associated with the collection of those funds. Parnell notes that in *In re Guardianship & Conservatorship of Bloomquist,* 246 Neb. at 725, 523 N.W.2d at 360, this court stated that "[t]he lien statute grants hospitals a method of obtaining a full or partial recovery for the value of services that the hospitals would probably have 'written off' as uncollectible; and while not a windfall to the hospitals, the recovery should not come without costs."

Parnell argues that § 52-401, as amended, creates an unreasonable and arbitrary distinction between those who have access to insurance or other source of third-party payment and those who do not. Parnell argues that if an insured person, for instance, is the victim of a tort-feasor, the victim's insurer would pay the victim's bill from the medical care provider. The insurer would then be entitled to claim a subrogation interest in any judgment or settlement the tort victim might collect, but the amount the insurer could collect from the judgment or settlement would be subject to attorney fees and costs pursuant to the common fund doctrine. See *In re Guardianship & Conservatorship of Bloomquist, supra.*

On the other hand, if an uninsured person is injured by a tort-feasor, the medical care provider would be uncompensated and would act directly against the victim pursuant to § 52-401. If a judgment is rendered or settlement reached, the lienholder can then collect from the proceeds without being subject to the common fund doctrine. Thus, argues Parnell, tort victims with

otherwise identical injuries and expenses could ultimately be compensated differently because one would obtain the benefit of the common fund doctrine and the other would not.

We confronted similar questions regarding § 52-401 in *Bergan Mercy Health Sys. v. Haven, ante* p. 846, 620 N.W.2d 339 (2000), although we specifically reserved judgment on the question of the exception to the common fund doctrine, see *id.* (party did not argue issue of common fund doctrine, and court did not consider it). We examined the legislative history of 1995 Neb. Laws, L.B. 172, and determined that it had been decided by the Legislature that doctors, nurses, and hospitals should be compensated when funds are available from the responsible party.

> The testimony provided at the committee hearing on the bill provided support for the stated objectives of the legislation. The testimony provided by representatives of hospitals and health care professionals generally established that health care providers give care to injured persons without regard to a person's ability to pay for such care, and that the restriction placed on § 52-401 by *In re Guardianship & Conservatorship of Bloomquist* threatened the fiscal solvency of health care institutions, particularly to the continuing ability to afford provision of emergent care to indigent injured persons. See, generally, Committee on Health and Human Services Hearing, L.B. 172, 94th Leg., 1st Sess. (February 8, 1995). The testimony also established that some health care providers, deprived of the benefit of § 52-401, would resort to immediately pursuing collection efforts against injured parties and obtaining judgments against them, rather than simply securing a lien and waiting for a judgment or settlement against the tort-feasor. *Id.*

*Bergan Mercy Health Sys. v. Haven, ante* at 853-54, 620 N.W.2d at 346.

The concerns expressed by the Legislature in amending § 52-401, and noted by this court in *Bergan Mercy Health Sys. v. Haven, supra,* apply with equal force to the issue raised by Parnell in the instant case. The Legislature determined that application of the common fund doctrine to health care providers would threaten the fiscal solvency of those providers and would potentially endanger their ability to continue provid-

ing care to indigent injured persons. We noted in *Bergan Mercy Health Sys. v. Haven* that unlike other creditors, physicians, nurses, and hospitals may be called upon to provide services without first ascertaining the patient's ability to pay. We concluded that this was a reasonable distinction, as the public at large has a particular interest in encouraging physicians, nurses, and hospitals to provide care without regard to the patient's ability to pay. See *id.*

The same distinction and the same logic compel us to conclude that physicians, nurses, and hospitals are reasonably distinct from other creditors, such as third-party payors, where the application of the common fund doctrine is concerned. The logical consequence of this distinction, as noted by Parnell, is that injured parties who are covered by third-party payment schemes obtain the benefit of the common fund doctrine, while other injured parties do not. This distinction, however, was reasonably drawn by the Legislature in order to protect the ability of health care providers to offer treatment without first ascertaining the patient's ability to pay, and we cannot say that this policy choice was so untenable as to render the statute unconstitutional.

We also note that, generally, third-party payors are able to protect themselves against the application of the common fund doctrine. For example, insurers are aware that the doctrine could be applied to any subrogation interest they might assert and can consider that expense when establishing the premiums that they will charge for coverage. Additionally, in *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994), the lienholders in that case argued that application of the common fund doctrine to them should be limited because of the distinction between a subrogation interest and a hospital lien. The lienholders argued that, unlike subrogated insurers, hospital lienholders have no interest in the injured patient's cause of action against the third-party tort-feasor, no standing to participate in the injured patient's personal injury action, and no separate cause of action against the tort-feasor or the tort-feasor's insurer. See *id.*

This court, in *In re Guardianship & Conservatorship of Bloomquist, supra,* found that public policy argument to be unpersuasive, but that does not compel us to conclude that the

distinction identified by the lienholders in that case would not support the Legislature's subsequent decision to amend § 52-401. The Legislature is the appropriate forum for resolution of questions concerning public policy. *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985). We have often stated that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *State v. Neiss, ante* p. 691, 619 N.W.2d 222 (2000). In this instance, the Legislature did not acquiesce and exercised its prerogative to change the law. The action taken by the Legislature did not exceed its constitutional boundaries.

## CONCLUSION

For the foregoing reasons, we conclude that Parnell's assignments of error are without merit and, therefore, affirm the judgment of the district court.

AFFIRMED.

HENDRY, C.J., dissenting.

I respectfully dissent from the majority opinion insofar as it addresses Neb. Const. art III, § 18. As explained by my dissent in *Bergan Mercy Health Sys. v. Haven, ante* p. 846, 620 N.W.2d 339 (2000), the classes created by Neb. Rev. Stat. § 52-401 (Reissue 1998) with regard to a special legislation claim are (1) the particular class of physicians, nurses, and hospitals who receive the privilege of the lien and (2) the general class of those who likewise perform services of any nature in the treatment of, or in connection with, an injury without the privilege of the lien. Under the rationale set out in my dissent in *Bergan Mercy Health Sys.*, I believe Parnell lacks standing to assert that the class of physicians, nurses, and hospitals created by § 52-401 violates Neb. Const. art III, § 18. Accordingly, I withhold any opinion regarding whether § 52-401 violates Neb. Const. art III, § 18.

McCORMACK, J., dissenting.

I respectfully dissent. It is obvious from the legislative history that the Legislature was responding to complaints from the hospitals who were unhappy with this court's decision 1 year before in *In re Guardianship & Conservatorship of Bloomquist*, 246

Neb. 711, 523 N.W.2d 352 (1994), wherein we ruled that the hospital must pay its proportionate share of the attorney fees from the recovery. The amendment to § 52-401 guts the *In re Guardianship & Conservatorship of Bloomquist* decision.

The stated purpose of the amendment to § 52-401 is to provide protection to those physicians, hospitals, and nurses who treat persons without any regard as to how that person is going to pay for those services. I do not have a quarrel with that purpose and would agree that any physician, hospital, or nurse who, when approached by a patient, does not require that before treatment is rendered, the patient show proof of insurance, medicare, or medicaid, or post a cash deposit if there is no insurance, or require another guaranty of payment, should get the protection of the stated purpose of § 52-401. However, I believe that the physicians, hospitals, or nurses seeking the protection afforded by § 52-401 should be required to make a showing that they do, in fact, regularly render health care without requiring, prior to rendering treatment, that the patient is covered by insurance, medicare, or medicaid or post a cash deposit, or require another guaranty of payment. Unless the physician, hospital, or nurse makes such a showing, there is no rational basis for affording this physician, hospital, or nurse the protection of § 52-401, and § 52-401 would be unconstitutional as to those particular physicians, hospitals, or nurses who do not make such a showing.

This case is troubling for another reason, namely, assignment of error No. 1, wherein the district court erred in overruling Parnell's motion to compel discovery for the accounting records of Good Samaritan. I joined in the unanimous decision of this court in *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999), as to "usual and customary charges," and I believe that my thinking has changed on this subject. In today's society, the vast majority of patients who enter hospitals or visit physicians are insured in one way or another, be that a health maintenance or preferred provider organization, standard health insurance, medicare, medicaid, et cetera. A substantial number, if not the majority, of the medical bills of these persons are discounted by the insurance payor. To say that the "usual and customary charge" of a hospital is the amount it bills rather than the amount that it actually receives in payment is akin to assuming

that every person who goes into a new car dealership pays "sticker price." I have no idea what discovery of Good Samaritan's records would show as to the "usual and customary" amount actually collected as opposed to the gross amount of its bill before discounts, but I believe that the trial court abused its discretion in denying Parnell access to this information which, in turn, may have provided the basis for this court to reconsider its decision in *Parnell v. Madonna Rehab. Hosp.* I respectfully submit that this discovery would also have shed light, and therefore be relevant, on whether Good Samaritan accepts all patients without requiring, before treatment is rendered, that the patient show proof of insurance, medicare, or medicaid or post a cash deposit, or require another guaranty of payment.

Additional reasons for my dissent can be found in my dissent in *Bergan Mercy Health Sys. v. Haven, ante* p. 846, 620 N.W.2d 339 (2000), and will not be reiterated here.