CHARMINE E. RAY, APPELLEE, V. HUBERT L. RAY, APPELLANT.

383 N.W.2d 752

Filed March 28, 1986. No. 84-875.

Robert C. Wester of Schirber Law Offices, P.C., for appellant.

Chris M. Arps, P.C., for appellee.

BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

PER CURIAM.

Hubert L. Ray (hereinafter referred to as Hubert) appeals to this court from a decree entered in a dissolution of marriage proceeding by the district court for Sarpy County, Nebraska. In that action Hubert was the respondent and his wife, Charmine, was the petitioner. A dissolution hearing was held October 3, 1984. At that hearing there was introduced in evidence a stipulation with reference to a property settlement entered into between the parties and also with regard to the custody of their only child, which they agreed was to be given to the petitioner. The court found that the marriage was irretrievably broken and entered a decree dissolving the marriage on October 29, 1984, the decree also incorporating the provisions of the stipulation entered into between the parties.

Hubert and Charmine were married on September 2, 1967, and their only child, Breck Lindsey Ray, was born on August 18, 1973. Both parties were 39 years of age at the time of the hearing on October 3, 1984, and were in good health. The record indicates that the parties were married shortly before Hubert began active duty in the Air Force in 1967. Hubert testified at the hearing for dissolution of the marriage that by virtue of the fact that he was in the Air Force, the parties moved around frequently after they were married. At the time the decree was entered, Hubert had put in 17 years of service and held the rank of lieutenant colonel, and he stated also that he had a "reasonably good shot" at making full colonel.

Both Hubert and Charmine are college graduates. Charmine taught school for 3¹/₂ years after the parties were married. She quit teaching before their child was born and has not returned to that vocation. She admitted at the dissolution hearing that

she left teaching of her own volition and not at the request of her husband. Charmine is not at the present qualified or licensed to teach school in Nebraska, but needs only one 3-hour educational course to become so qualified.

At the time of the dissolution hearing, Charmine was temporarily employed by AT&T, and has been employed by that company for approximately 1 year prior to the hearing, earning approximately $5.25 per hour. She testified at the hearing that she expected to be laid off the following month.

Charmine, in her testimony at the hearing, admitted that she had had a chemical dependency problem throughout her marriage which limited her ability to contribute financially and emotionally to her family. However, she had sought medical help for this dependency and did not see it as a problem in the future.

The court, in its decree, awarded custody of the minor child to Charmine, and awarded her $300 per month as child support, and also awarded her $1,000 per month alimony "until further order of this Court or the death of the petitioner." The district court also noted in its decree that the alimony was "subject to dropping to $500.00 per month in the event of a remarriage of the petitioner or living under circumstances that would constitute a common law marriage . . . ."

The court, in its decree, divided the property of the parties equally. Charmine was awarded all personal belongings, household goods, and furnishings in her possession and also a 1984 Oldsmobile automobile. Hubert was ordered to pay all indebtedness of the parties incurred prior to the filing of the petition. He was also awarded all personal belongings and household goods and furnishings in his possession; also a 1981 Ford pickup truck with a camper, a home in Virginia valued at $130,000, and all interests and rights in his U.S. Air Force pension.

It appears from the evidence that Hubert is eligible to retire from the Air Force after completing 20 years of service. In this case his 20 years of service will be completed in approximately 2 more years. If he would retire at that time, he will receive $1,500 per month pension. At the time the dissolution decree was entered, the pension had not yet vested. Thus, if Hubert had

retired on the date of the decree, he would not have received any pension benefits. It should be remembered, however, that the district court, in its decree, awarded Hubert sole interest in all of his rights in the military pension.

Hubert alleges in his assignment of error that the district court abused its discretion in the award of $1,000 per month alimony to Charmine. However, he admits in his brief that the first $500 of the total $1,000 alimony, compensating Charmine for her interest in the Air Force pension, "may be excessive, but it probably is not an abuse of discretion." It is the remaining $500 alimony for "an indefinite period of time" which Hubert alleges is an abuse of discretion. Brief for Appellant at 11.

Under the established law of this state, we review this case de novo on the record and reach conclusions without reference to the conclusions reached by the trial judge. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984). However, when the evidence is in conflict, this court gives weight to the fact that the trial judge saw and heard the witnesses and accepted one version of the facts rather than another. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984); *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980).

The determination of alimony is initially entrusted to the discretion of the trial court and will not be disturbed unless there has been an abuse of discretion. *Ford v. Ford*, 219 Neb. 13, 360 N.W.2d 495 (1985). Ultimately, the test for the award of alimony is one of reasonableness as determined by the facts of each case. *Sonntag v. Sonntag*, 219 Neb. 583, 365 N.W.2d 411 (1985); Neb. Rev. Stat. § 42-365 (Reissue 1984). In considering whether the trial judge abused his discretion in this case, we begin with the premise that pension benefits are properly to be considered by the court in exercising its discretion in property division or award of alimony. *Raley v. Raley*, 218 Neb. 644, 357 N.W.2d 470 (1984); *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984); *McBride v. McBride*, 211 Neb. 459, 319 N.W.2d 72 (1982); *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981). Under Neb. Rev. Stat. § 42-366 (Reissue 1984), which statute was amended in 1980, any pension benefits may be considered as marital property, and thus divisible in a

dissolution of marriage action, whether or not the pension is vested.

Section 42-366 was relied upon by this court in *Kullbom v. Kullbom, supra,* in which we upheld the inclusion of a pension as a part of the marital estate in the division of property in a dissolution of marriage action. In 1981 the U.S. Supreme Court held that federal law precluded a state court from awarding a nonmilitary spouse a portion of the military spouse's government pension. *McCarty v. McCarty,* 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). Subsequently, this court decided *Pyke v. Pyke,* 212 Neb. 114, 321 N.W.2d 906 (1982), in which we held that, as a result of *McCarty v. McCarty, supra,* military pensions were exempt from the provisions of § 42-366. However, we noted that the court could still consider such pension as a source of alimony for the nonmilitary spouse. Congress subsequently passed the Uniformed Services Former Spouses Protection Act, Pub. L. No. 97-252, § 1002(a), 96 Stat. 730 (1982) (codified at 10 U.S.C. §§ 1401 et seq. (1982)) (USFSPA). This act provided that the retirement income of a military officer could be treated as solely the property of the military officer or the property of both the military officer and his spouse in accordance with the law of that particular state. Subsequently, this court decided *Taylor v. Taylor, supra,* in which we held that, as a result of this statute, "nondisability military pensions need no longer be treated differently than nonmilitary pensions" as per division of property in a marriage dissolution case. 217 Neb. at 413, 348 N.W.2d at 889.

In this case the trial court specifically awarded respondent "[a]ll interest and rights in his United States Air Force Pension." The trial court also awarded alimony to petitioner of $1,000 per month from November 1, 1984, until further order of the court or the death of petitioner "subject to dropping to $500.00 per month in the event of a remarriage of the petitioner or living under circumstances that would constitute a common law marriage should one be recognized in this jurisdiction." In his oral remarks at the conclusion of the case, the trial judge explained this decision by stating: "And for the record, the rationale behind that is the $500 a month is to compensate her for an interest in the Air Force pension . . . ." It is apparent that

the trial judge was awarding petitioner alimony and considering the Air Force pension as the source of funds in the award of that alimony. We find that the trial court did not err in so considering respondent's potential Air Force pension as a source of revenue for the purpose of awarding alimony.

We do determine, however, that the trial court did abuse its discretion in the amount of alimony. We determine that while petitioner was entitled to $1,000 per month alimony at the time of the entry of the decree herein, the decree should be modified to provide that the alimony shall be $500 per month 18 months after entry of the decree. Beginning May 1, 1986, the alimony shall be $500 per month until petitioner dies or remarries or until the respondent begins receiving his retirement benefits in accordance with his military pension plan. At the time he begins to receive his military pension benefits, respondent is to continue to pay petitioner the sum of $500 per month until the death of either party or the further order of the court. This will allow the petitioner to complete additional schooling in a relatively short period of time and then receive alimony which will continue to be paid after respondent retires and begins to reap the retirement benefits primarily earned while petitioner and respondent were married to one another. See *Anderson v. Anderson, ante* p. 212, 382 N.W.2d 620 (1986).

The trial court's judgment must be modified in another respect, although not raised by either party. We determine the phrase in the court's decree to the effect that petitioner's receipt of alimony should be continued subject to "dropping to $500.00 per month in the event of . . . [petitioner's] living under circumstances that would constitute a common law marriage should one be recognized in this jurisdiction" should be deleted from the decree. We determined in *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985), that in a system of "no fault" divorce, spousal misconduct alone does not determine a divorced spouse's entitlement to alimony.

The trial court's decree, as modified, is affirmed.

AFFIRMED AS MODIFIED.

BRODKEY, J., Retired, concurring.

I concur in the court's well-reasoned opinion but am compelled to write separately to emphasize the fact that we are

dealing here with a military pension that had *not yet vested* at the time the original dissolution decree was entered.

Neb. Rev. Stat. § 42-366(8) (Reissue 1984) states that "[t]he court shall include as part of the marital estate, for the purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, *whether vested or not vested.*" (Emphasis supplied.)

The court's decision upholding the use of a military pension which had not yet vested as a source of alimony is a logical one in view of the above statute and the pattern of recent case law in this state regarding military pensions, but I believe it deserves further emphasis to avoid possible future confusion.