GAYLIENE MARIE LONGO, APPELLEE AND CROSS-APPELLANT, V.
DEAN JAY LONGO, APPELLANT AND CROSS-APPELLEE.

663 N.W.2d 604

Filed June 20, 2003.    No. S-02-394.

Carll J. Kretsinger, P.C., for appellant.

Eileen Reilly Buzzello and Brandie M. Fowler, of Holthaus Law Offices, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Dean Jay Longo appeals from an order of the district court for Sarpy County dissolving his marriage to Gayliene Marie Longo. He contends that the court erred in awarding Gayliene (1) an interest in his future military pension benefits and (2) alimony of $1 per year modifiable only upon a potential reduction to his future military pension by a potential future disability offset. Gayliene cross-appeals, arguing that the award of alimony was inadequate and that the property division was inequitable.

## I. FACTS

The parties married on August 15, 1991. At all times during the marriage, Dean was a commissioned officer on active duty in the U.S. Air Force. At the time of trial, he held the rank of lieutenant colonel and had served on active duty for 18 years. Dean testified that he could remain at his present rank until retirement. However, he had no guarantee of being permitted to continue his service as a commissioned officer, as his service was at the pleasure of the President of the United States.

Dean testified that neither he nor the U.S. government contributed on a monthly basis to a pension fund for his benefit. Instead, after 20 years of active duty, Dean will become eligible to apply for retirement status and receive a monetary pension if his application is approved. Dean understood that if he served

20 years and then retired, his pension would be calculated on the basis of a percentage of his salary at the highest rank achieved. Dean testified that it was his intention to eventually retire from the Air Force.

Gayliene resided in California at the time of trial. She was employed there as an assistant manager of a department store at a base salary of $1,200 per month, plus commissions. Gayliene was employed outside the home at various times during the marriage, but at other times, she stayed home with the parties' two minor children. It was difficult for her to obtain consistent employment due to the frequent moves necessitated by Dean's military career. Following dissolution of the marriage, Gayliene intended to return to school for 2 years and obtain her teaching credentials. She requested alimony of $1,000 a month for 5 years. She also requested a portion of Dean's future retirement, based on their 10 years of marriage during his military service.

On April 1, 2002, the district court entered a decree of dissolution. The court concluded that it had jurisdiction over the parties and awarded sole custody of the two minor children to Dean, with rights of visitation to Gayliene. Dean was awarded the marital home subject to its mortgages, for a net equity of approximately $10,000, and each party was awarded certain personal property. The marital debts were also divided.

With respect to Dean's military pension, the court found that the parties were married for 10 of the years that Dean had been on active military duty. The court determined that Dean would continue his military career until retirement and that there was a "substantial likelihood" that Dean would receive his pension. Therefore, "based upon the years of marriage [and] years overlapping in service," the court awarded Gayliene

> $690.68 of [Dean's] net disposable non-disability military pension commencing on the first day of the first month during which [Dean] is entitled to receive and is in receipt of same; and, on the first day of each month thereafter for so long as [Dean] shall be entitled to receive such or until the death of [Gayliene], whichever event should occur first.

The court also awarded Gayliene alimony in the sum of $1 per year for life, "to be modifiable only upon [Gayliene's] portion of [the] military pension being reduced by a portion of said pension

being received as disability." Dean filed this timely appeal, and Gayliene cross-appealed.

## II. ASSIGNMENTS OF ERROR

Dean assigns, restated and summarized, that the trial court erred in (1) awarding Gayliene an interest in his future military retirement benefits and (2) awarding Gayliene alimony of $1 per year for life modifiable only upon a future reduction to the military pension by a disability offset.

On cross-appeal, Gayliene assigns, restated, that the trial court erred in (1) awarding only $1 per year in alimony, (2) tying the alimony award to the property division, and (3) making an inequitable property division.

## III. STANDARD OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002); *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002); *Carter v. Carter*, 261 Neb. 881, 626 N.W.2d 576 (2001).

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003); *Hartman v. City of Grand Island*, 265 Neb. 433, 657 N.W.2d 641 (2003).

## IV. ANALYSIS

### 1. DIVISION OF FUTURE MILITARY PENSION BENEFITS

The primary issue on appeal is whether the district court was legally authorized to award Gayliene a portion of any military pension which Dean may receive in the future. Dean contends that this was impermissible because he was not receiving or eligible to receive such pension at the time of the decree and that thus there was no asset to be divided. He bases this argument on both federal and state law.

## (a) Federal Law

Prior to 1981, division of military pensions in dissolution actions was governed exclusively by state law. In that year, however, the U.S. Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), in which it held that federal law precluded a state court from dividing military nondisability retired pay pursuant to state law. The Court reasoned that then-existing federal law clearly intended that all retirement benefits be enjoyed by only the service member. After reaching its conclusion and noting the harsh result such conclusion could impose, the Court noted that "Congress may well decide . . . that more protection should be afforded a former spouse of a retired service member." 453 U.S. at 235-36.

Congress responded by enacting the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1401 et seq. (2000). Initially, this legislation was viewed as a complete grant of authority to the states to divide military nondisability retirement pay pursuant to state law. See *Bullock v. Bullock*, 354 N.W.2d 904 (N.D. 1984) (citing cases). This interpretation, however, was limited by the U.S. Supreme Court in *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). In that case, the Court addressed the issue of whether the USFSPA authorized state courts to treat military retirement pay waived by the retiree in order to receive veterans' disability benefits as property divisible upon divorce. Before directly addressing the issue, the Court found:

> Because pre-existing federal law, as construed by this Court, completely pre-empted the application of state community property law to military retirement pay, Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property.

*Mansell*, 490 U.S. at 588. In a footnote, the Court noted that it used the phrase "community property" only because the case at hand involved such law and that both its decision in *Mansell* and the USFSPA were equally applicable to equitable property division states. 490 U.S. at 584 n.2. Thus, according to *Mansell*, the USFSPA must affirmatively grant a state the power to

divide a military pension, or the preemptive effects of *McCarty* remain applicable.

Dean's primary argument on appeal is largely based on *Mansell*. He argues that the current form of the USFSPA provides in relevant part:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

§ 1408(c)(1). Section 1408(a)(4) defines "disposable retired pay" to mean "the total monthly retired pay to which a member is *entitled*," less certain identified amounts. (Emphasis supplied.) Dean contends that because he has not yet served on active duty for 20 years, he is not presently "entitled" to a pension benefit, and that therefore the district court lacked the authority to divide his future military pension. He argues that *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), prohibited state courts from dividing any military pensions and that states now possess only that authority to divide pensions that is expressly granted to them by the subsequent enactment of the USFSPA.

In *Mansell, supra*, the U.S. Supreme Court acknowledged that "domestic relations are preeminently matters of state law" and that federal legislation is rarely intended "to displace state authority in this area." 490 U.S. at 587. The Court noted its prior cases holding that federal preemption in this area would not be found in the absence of a showing that it is positively required by direct enactment. Based upon the "plain and precise language" of the definitional section of the USFSPA, the Court concluded that Congress precluded the states from treating as marital property retirement pay waived by a service member in order to receive disability benefits. 490 U.S. at 589. Thus, the question presented here is whether use of the word "entitled" in § 1408(a)(4) is a plain and precise prohibition of any division of military pension benefits to which a spouse may become entitled in the future.

Reading this language in the context of other provisions of the USFSPA, we conclude that the language cannot be so construed. For example, § 1408(d)(1) states in relevant part:

> In the case of a member entitled to receive retired pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date of effective service. *In the case of a member not entitled to receive retired pay on the date of the effective service of the court order*, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired pay.

(Emphasis supplied.) This statutory language indicates that a court can order division of pension benefits which a service member will receive in the future. In addition, § 1408(c)(3) provides: "This section does not authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section." Although Dean argues that this provision supports his interpretation that the USFSPA authorizes disposition only of retirement pay currently being received, it can also be reasonably interpreted as applying to pension benefits which a spouse currently on active military duty will receive upon future retirement. If the USFSPA were construed to permit a court to order division of a military pension only after a service member had retired, this provision would be superfluous.

Neither the parties' briefs nor our research has disclosed any case construing the USFSPA as preempting the power of a state court to treat a future military pension entitlement as a marital asset in a dissolution proceeding. Dean relies upon two cases in which the Supreme Court of Arkansas held that a share of future military pension benefits could not be awarded in a dissolution proceeding, but both of these cases are based upon an interpretation of state law and do not address federal preemption. See, *Christopher v. Christopher*, 316 Ark. 215, 871 S.W.2d 398 (1994); *Durham v. Durham*, 289 Ark. 3, 708 S.W.2d 618 (1986). Similarly, other state courts considering whether it is permissible to treat a future military pension entitlement as a marital asset have relied upon state law to resolve the issue. See, *In re Marriage of Hunt*, 909 P.2d 525 (Colo. 1995) (finding under state law future military pension is divisible asset); *Bullock v. Bullock*, 354 N.W.2d 904 (N.D. 1984) (finding under state law future military pension is divisible asset); *Southern v.*

*Glenn,* 677 S.W.2d 576 (Tex. App. 1984) (finding under state law future military pension is divisible). See, also, Mark E. Sullivan, *Military Pension Division: Crossing the Minefield,* 31 Fam. L.Q. 19 (1997). We conclude that federal law does not preempt the power of a state court to treat the future nondisability pension entitlement of a spouse currently on active military duty as a marital asset in a dissolution proceeding. We therefore turn to the issue of whether such treatment is permissible under Nebraska law.

(b) Nebraska Law

Neb. Rev. Stat. § 42-366(8) (Reissue 1998) provides in relevant part that the marital estate which is subject to equitable division in a dissolution proceeding includes "any pension plans, retirement plans, annuities, and other deferred compensation benefits *owned by either party,* whether vested or not vested." (Emphasis supplied.) Dean argues that because he has no guarantee of receiving a military pension in the future, he has no ownership interest under this statutory provision. This argument, however, runs contrary to our decisions involving the treatment of military pension benefits in dissolution proceedings.

For example, in *Rockwood v. Rockwood,* 219 Neb. 21, 360 N.W.2d 497 (1985), the husband had served on active duty for 15 years at the time of the divorce decree. We noted that § 42-366(8) requires a court to include any pension and retirement plans in the marital estate, but does not require that each pension be divided between the parties. We therefore concluded that the trial court did not abuse its discretion in awarding the husband his interest in the military pension and the wife the entire value of the marital home in lieu of any interest in the pension. Although this case did not involve the division of a nonvested military pension, it supports the proposition that a military pension which has not vested because the service member is not yet eligible to retire is nevertheless properly considered as a part of the marital estate under § 43-366(8).

Similarly, in *Anderson v. Anderson,* 222 Neb. 212, 382 N.W.2d 620 (1986), the husband had been on active military duty for 16 years prior to the dissolution decree. We concluded that sixteen-twentieths of the amount the husband would receive

each month in military retirement pay was acquired during the marriage and that the district court therefore did not abuse its discretion in awarding the husband all interest in his pension, subject to the condition that he pay his wife $500 per month at the time he began to receive such benefits.

The military spouse in *Ray v. Ray*, 222 Neb. 324, 383 N.W.2d 752 (1986), had served on active military duty for 17 years prior to the dissolution. The district court awarded him sole interest in his military pension and awarded the wife $500 a month in alimony "'to compensate her for an interest in the Air Force pension.'" *Id.* at 328, 383 N.W.2d at 754. We noted that under § 42-366(8), "any pension benefits may be considered as marital property, and thus divisible in a dissolution of marriage action, whether or not the pension is vested." *Id.* at 327-28, 383 N.W.2d at 754. We further concluded that the court did not abuse its discretion in considering the pension as the source of the funds for the award of alimony. One concurring judge wrote separately to emphasize that the court was considering a military pension that was not yet vested as part of the marital estate, noting that this approach was "logical" under § 42-366(8). *Ray*, 222 Neb. at 330, 383 N.W.2d at 755 (Brodkey, J., concurring).

We agree with Justice Brodkey's observation that § 42-366(8) logically requires that a nonvested military pension be treated as marital property in a dissolution proceeding. While military personnel do not make monetary investments in a pension plan, they invest time and personal sacrifice in order to qualify for a nondisability military pension. Spouses of such personnel share in this investment to the extent that the duration of the marriage coincides with the period of military service. As one court has noted, the future retirement pay of a career military service member who is not yet eligible to retire "is a contractual right, subject to a contingency, and is a form of property." *Jackson v. Jackson*, 656 So. 2d 875, 877 (Ala. Civ. App. 1995). Because § 42-366(8) specifically requires the inclusion of retirement benefits "whether vested or not vested" in the marital estate, we conclude that the district court did not err in awarding Gayliene a share of Dean's future nondisability military pension entitlement, payable only if and when such benefits become payable to Dean.

Dean also argues that the trial court erred in its division of his military pension because the trial court contemplated future increases beyond the termination of the marital estate. Dean does not, however, specifically challenge the court's calculation of the future pension benefits. The court noted in the decree that its division of the pension benefits was "based upon the years of marriage [and] years overlapping in service." Although no calculations are included in the record, this language indicates that the trial court considered only the years in which the marriage coincided with Dean's military service in determining Gayliene's share of pension benefits. We find no abuse of discretion in this regard.

## 2. ALIMONY

The trial court awarded Gayliene alimony in the sum of $1 per year for life, "to be modifiable only upon [Gayliene's] portion of [the] military pension being reduced by a portion of said pension being received as disability." Both Dean and Gayliene contest this award of alimony.

■ Dean essentially contends that the award of alimony was an improper attempt to circumvent the limitations of *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). As noted, *Mansell* held that that portion of military retired pay waived in order for a member to receive disability benefits is not divisible under the USFSPA. Because of this holding, if a former spouse is awarded a certain percentage of military retirement benefits in a divorce decree and the member spouse subsequently voluntarily reduces his or her military retirement pay in order to receive disability benefits, the "pie" from which the former spouse's percentage is taken is reduced, thus reducing the total monthly payment to the former spouse. See *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). However, we held in *Kramer*, 252 Neb. at 546, 567 N.W.2d at 113, that

> while a Nebraska court may not include service-connected disability benefits awarded to a military retiree as a part of a marital estate under *Mansell* [citation omitted], it may consider such benefits and the corresponding waiver of retirement pension benefits required by federal law in determining whether there has been a material change in

circumstances which would justify modification of an alimony award . . . .

In this case, the award of nominal alimony modifiable only upon a change in the nature of Dean's future pension benefits is consistent with our holding in *Kramer* and does not constitute an abuse of discretion.

In her cross-appeal, Gayliene argues that the award of alimony in the sum of $1 per year was inadequate and that the award was improperly tied to the property division. She contends that alimony is to be considered separate from property division and that the record demonstrates that Dean's earning power has exceeded and will continue to exceed her earning capacity. Specifically, she argues that she chose to forgo additional education in order to assist Dean with his military career and that an award of alimony is necessary to correct the economic imbalance of the parties.

A review of the record indicates a definite economic imbalance between the parties, although it is not as significant as Gayliene contends. Gayliene's earnings of approximately $12,000 in 2001 were derived from approximately 6 months' employment after she moved from Nebraska to California in June of that year. On an annual basis, therefore, she could anticipate earnings of at least $24,000. Moreover, Gayliene's argument that she chose to forgo additional education in order to further Dean's military career is not supported by the record. In fact, Gayliene testified that she did go to school periodically during the marriage. Although she did not have outside employment during a 2-year period when she chose to stay home with the children, during other times, she was employed and earned approximately $25,000 per year. The record further indicates that Gayliene voluntarily left the marital home and her family on two separate occasions and obtained employment sufficient to support herself.

Dean's 2001 W-2 form indicates that he earned approximately $5,500 per month. The district court calculated Dean's total monthly income for purposes of child support calculations at $7,500. Thus, while there is a disparity in the earning power of the parties, we conclude that in the absence of evidence that Gayliene chose to forgo a career or education because of the

marriage, the award of nominal alimony was not an abuse of discretion.

### 3. PROPERTY DIVISION

On cross-appeal, Gayliene also argues that the property division was inequitable, as she received only a few items of personal property, while Dean received all items in the family home and the home itself. The trial court valued the home at $135,000, but also assigned Dean all debt on the home, with a resulting equity award of approximately $10,000. Gayliene received her clothing, a table, her automobile, a bedroom set, a television, a DVD player, and some miscellaneous personal property, all of which she had taken with her when she moved to California. She contends that while the marital debts were divided evenly, the assets were not.

Gayliene's argument that the marital debts were divided evenly is not well founded. As noted above, Dean was assigned all of the debt on the marital home, which totaled approximately $125,000. In addition, the decree specifically assigned him debts totaling approximately $19,000. Gayliene was assigned debts totaling approximately $8,000. There is therefore a significant disparity in the division of marital debt, and the district court did not abuse its discretion in awarding Dean slightly more marital assets to account for some of this disparity.

## V. CONCLUSION

Federal law does not prohibit and state law specifically permits the district court's inclusion of Dean's future nondisability military retirement benefits in the marital estate and its award of a portion of such benefits to Gayliene. We find no abuse of discretion in this or any other aspect of the property division or the alimony award in this case. The judgment of the district court is affirmed.

AFFIRMED.